No. 105,091

STATE OF KANSAS, *Appellee*, v. THOMAS REMMERT, *Appellant*.

(316 P.3d 154)

Opinion filed January 17, 2014.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause, and *Joanna Labastida*, of the same office, was on the brief for appellant.

*Darrin C. Devinney*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: A jury convicted Thomas Remmert of aggravated criminal sodomy, an off-grid person felony. The district court sentenced Remmert to a hard 25 life sentence.

On appeal, Remmert argues that the district court erred in admitting prior crimes evidence under K.S.A. 2009 Supp. 60-455(d), that the State presented insufficient evidence to convict him of aggravated criminal sodomy, and that the district court abused its discretion when it denied his motion for a departure sentence.

## FACTS

In November 2009, Remmert lived at a two-bedroom home in El Dorado with his girlfriend, Cynthia Tuder. Cynthia's adult daughter, Jennifer, and her 5-year-old son, S.G., also lived at the residence. Remmert and Tuder shared one bedroom, Jennifer and S.G. shared the other bedroom.

At approximately 5 p.m. on Sunday, November 15, 2009, Jennifer was in her bedroom with her friend watching a Kansas City Chiefs football game. Jennifer's grandfather had come to the home that day to visit. Remmert, S.G., and Jennifer's grandfather were

in the kitchen eating chili. Tuder was in her bedroom clipping coupons.

At around 5:30 p.m., Jennifer noticed that she no longer heard any noise coming from the kitchen, so she left her bedroom to check on S.G. On her way to the kitchen, Jennifer noticed that her grandfather had left because his van was no longer parked outside. When Jennifer walked into the kitchen, she saw S.G. standing in front of Remmert. Remmert had his hands around the back of S.G.'s head. For a couple of seconds, Remmert was not aware that Jennifer had entered the kitchen, but when he did notice Jennifer, he pushed S.G. away from him. At that moment, Jennifer could see that Remmert's jogging pants were pulled down just enough to expose his penis, which he had placed inside S.G.'s mouth.

According to Jennifer, she was in shock and scared by what she had just witnessed. She proceeded to get a bowl out of the cabinet and then walked over to the stove to get some chili. As she was filling her bowl with chili, Remmert walked up to Jennifer and told her that her grandfather had said that the chili was good because it was homemade. Jennifer did not say anything in response and just went to the table. Remmert then said "boo" to Jennifer in an apparent attempt to scare her. At that point, both Jennifer and S.G. left the kitchen and went into Tuder's bedroom.

Sometime between 30 minutes and an hour later, Jennifer took S.G. and left the residence. After going to her brother's home, Jennifer returned to the residence and got some clothes for S.G. Between the times she left and returned to the residence, Jennifer did not call the police.

Later that evening, Jennifer called Cheryl Hayes who, along with her husband Chris, had provided childcare to S.G. since he was an infant. Jennifer told Cheryl about what she had witnessed. Cheryl relayed this information to Chris, who immediately got into his vehicle and drove to Remmert's home to confront Remmert about allegedly molesting S.G. Cheryl called the police to report what Chris was intending to do.

At 8:28 p.m., police were dispatched to Remmert's residence. Patrol Sergeant Jeff Baker of the El Dorado Police Department was the first officer to arrive at 8:31 p.m. A second officer arrived

shortly thereafter. Chris was already at the residence speaking with Tuder when Officer Baker walked up to the residence. After asking Chris why he was there, Baker ordered Chris to go stand by the street with the other officer.

Baker then spoke to Remmert, who was upset and said that he wanted "everyone" to leave him alone. Remmert explained to Baker that people were driving by his house and that he had been receiving threatening phone calls. Remmert said that Jennifer was accusing him of molesting S.G., which he denied doing. Baker, while at the scene, did not observe anyone driving by the residence or hear Remmert's phone ring.

Before leaving the residence, Baker called Jennifer and asked her to meet him at the police station. Jennifer met with officers at around 9 p.m., telling them about seeing Remmert forcing S.G. into performing oral sex. Jennifer told police that after getting a bowl of chili, she took S.G. and went back to their bedroom. She then stated that a few minutes later, she told Tuder about what she had witnessed. An argument ensued, presumably because Tuder did not believe Jennifer's story. Accordingly, Jennifer took S.G. and left the house.

Later that evening, police returned to the residence and transported Remmert to the police station where he was officially placed under arrest.

Shortly after midnight, S.G. was examined by Rhonda Smith, a sexual assault nurse examiner. Smith spoke with Jennifer before examining S.G. Jennifer told Smith that after witnessing Remmert forcing S.G. into performing oral sex, she proceeded to get a bowl of chili and then walked back into her bedroom where her friend was at. She told the friend about what she had just witnessed. The friend told her to contact the police. Jennifer told Smith that she just kept thinking that she could not believe what she had just seen. Smith said that Jennifer was very tearful while telling her story and that she kept repeating that she could not get the image of what she had witnessed out of her head.

Smith examined S.G. but did not observe any injuries. S.G. was eventually discharged from the hospital at 2:35 a.m., on November 16.

The State charged Remmert with one count of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1). Prior to trial, the State filed a motion pursuant to K.S.A. 2009 Supp. 60-455(d) to admit evidence that Remmert was charged in 1987 with aggravated incest of his stepdaughter and subsequently entered into a diversion agreement regarding the charge. The district court conducted hearings on the motion on February 23, March 10, and March 12, 2010. The transcript of the final hearing on March 12 was not included in the record on appeal. But in a journal entry filed on April 29, 2010, the district court stated that after reviewing *United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007), K.S.A. 2009 Supp. 60-455(d), and K.S.A. 60-445, it concluded that evidence of the prior charge, the subsequent diversion agreement, and a brief statement regarding the victim's age, residence, and relationship with Remmert were admissible at trial.

At trial, the State presented the above-mentioned evidence. With regard to the K.S.A. 60-455 evidence, the State introduced into evidence (1) a copy of the 1987 complaint filed in Chase County, Kansas, charging Remmert with aggravated incest; (2) a copy of the diversion agreement; (3) and a copy of the following statement: "The alleged victim in Chase County case # 87-CR-036 was Thomas Remmert's stepdaughter. She was between 5 and 7 years old at the time of the offense charged. She lived with the defendant in the same residence during the time of the offense charged."

Remmert raised a contemporaneous objection to the admission of the K.S.A. 60-455 evidence.

At trial, Tuder was the only witness to testify on behalf of the defense. Tuder said that in the middle of October 2009, she told Jennifer that she would be moving out and marrying Remmert. According to Tuder, Jennifer became upset at hearing about Tuder's plan. In addition, Tuder said that it was her opinion that Jennifer lies to get what she wants. Finally, Tuder said that on the day of the alleged incident, after Jennifer had told her what she had witnessed, Tuder suggested that they call the police, but Jennifer said no.

The district court gave the following instruction to the jury regarding the K.S.A. 60-455 evidence admitted at trial:

"Evidence has been admitted in this case that the defendant was previously charged with a different crime involving an allegation of child sexual abuse. This previous incident is alleged to have occurred in Chase County, Kansas, on August 15, 1987, or during the 2 years immediately preceding that date. The defendant was not convicted of that crime but rather entered into a diversion agreement with the Chase County Attorney's office.

"This prior criminal charge may be considered by you only as it may bear upon any matter which is relevant and probative to the issues in the present case. It is for you alone as the jury to determine what weight to give this evidence in determining whether the State of Kansas has met its burden of proving all elements of the current crime beyond a reasonable doubt."

The jury found Remmert guilty of aggravated criminal sodomy. Pursuant to Jessica's Law, K.S.A. 21-4643, the district court sentenced Remmert to a hard 25 life sentence. Remmert filed a timely notice of appeal.

### K.S.A. 60-455 EVIDENCE

On appeal, Remmert argues that the district court erred when it, pursuant to K.S.A. 2009 Supp. 60-455(d), admitted evidence at trial that he was charged in 1987 with aggravated incest of his stepdaughter and subsequently entered into a diversion agreement regarding the charge. Remmert contends that this evidence constituted propensity evidence which, according to Remmert, is still barred by the plain language of K.S.A. 2009 Supp. 60-455(a).

Remmert's argument raises an issue of statutory interpretation which is reviewed de novo on appeal. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

The pertinent parts of K.S.A. 2009 Supp. 60-455 state:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

. . . .

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

Remmert notes in his brief that K.S.A. 2009 Supp. 60-455(a) unequivocally states that evidence of prior crimes is inadmissible to prove propensity. He contends that there is no language within K.S.A. 2009 Supp. 60-455 that operates to exclude subsection (d) from subsection (a)'s mandate.

Remmert's argument was recently rejected by this court in *State v. Spear*, 297 Kan. 780, 304 P.3d 1246 (2013), and *State v. Prine*, 297 Kan. 460, 303 P.3d 662 (2013). In *Prine*, this court stated:

"Under the plain language of K.S.A. 2009 Supp. 60-455(d), the legislature carved out an exception to the prohibition on admission of certain types of other crimes and civil wrongs evidence to prove propensity of a criminal defendant to commit the charged crime or crimes for sex crime prosecutions. As long as the evidence is of 'another act or offense of sexual misconduct' and is relevant to propensity or 'any matter,' it is admissible, as long as the district judge is satisfied that the probative value of the evidence outweighs its potential for undue prejudice." *Prine*, 297 Kan. 460, Syl. ¶ 3.

In *Spear*, the defendant, like Remmert here, argued that the legislature, in amending K.S.A. 60-455, failed to accomplish its goal of expanding the evidence that could be admitted in a sex crime trial to include evidence that was material only to prove propensity. While this court agreed with the defendant in *Spear* that the legislature could have used different wording to make its intent clearer, this court stated that the language of the amended version of K.S.A. 60-455 was

"sufficiently explicit to create an exception to the general rule in subsection (a) prohibiting the admission of other crimes or civil wrongs evidence for the purpose of proving a propensity to commit a crime. In sex crime prosecutions, K.S.A. 2012 Supp. 60-455(d) explicitly allows evidence of other acts or offenses of sexual misconduct to show a propensity to commit such an act or crime and any other matter to which it is relevant and probative." *Spear*, 297 Kan. at 789.

Contrary to Remmert's assertion, his prior diversion agreement was admissible under K.S.A. 2009 Supp. 60-455(d) to show that he had the propensity to sexually abuse a child—an issue that was relevant to determining Remmert's guilt in this case. Furthermore, in determining whether to admit the prior crimes evidence, the district court stated that it had reviewed *Benally*, a federal case that this court cited in *Prine* as providing helpful guidance on how courts are to weigh the probative value of prior crimes evidence against the threat of undue prejudice. See *Prine*, 297 Kan. at 478. The court's citation to *Benally* and its conclusion that evidence of Remmert's prior diversion agreement was admissible at trial indicates that the court considered and determined that the probative value of the evidence outweighed the risk of unfair prejudice. It cannot be said that the district court abused its discretion in making this determination. See *State v. Wilson*, 295 Kan. 605, 612, 289 P.3d 1082 (2012) (A district court's determination of whether the probative value of evidence outweighs its potential for producing undue prejudice is reviewed for abuse of discretion.).

Accordingly, we conclude that the district court did not err in admitting evidence of Remmert's prior diversion agreement pursuant to K.S.A. 2009 Supp. 60-455(d).

### INSUFFICIENT EVIDENCE

Next, Remmert argues that the State presented insufficient evidence to convict him of aggravated criminal sodomy. He notes that the State's case rested entirely on Jennifer's credibility because she was the only eyewitness to the crime who testified at trial. Furthermore, the State's other witnesses, when testifying about the alleged sexual abuse between Remmert and S.G., based their testimonies on the information they received from Jennifer. Remmert contends that this was inadequate evidence to convict him of aggravated sodomy because Jennifer's credibility was put into question at trial. Remmert notes that Tuder's testimony at trial indicated that Jennifer was untruthful. Furthermore, Remmert claims that Jennifer's actions after supposedly witnessing him sexually abuse S.G. (*i.e.*, proceeding to get a bowl of chili and failing to immediately contact the police) were not indicative of someone

who had just witnessed her 5-year-old son being forced to perform oral sex.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Qualls*, 297 Kan. 61, Syl. ¶ 1, 298 P.3d 311 (2013).

Clearly, the prohibition against appellate courts reweighing the evidence or making witness credibility determinations is fatal to Remmert's argument. Jennifer testified at trial that she saw Remmert forcing S.G. into performing oral sex on him. The testimonies of the State's other witnesses indicated that Jennifer's descriptions of this abuse remained consistent over multiple retellings. The jury was able to observe Jennifer's demeanor while testifying and being subjected to cross-examination regarding her behavior after witnessing the abuse.

We conclude that when all the evidence presented at trial is viewed in the light most favorable to the prosecution, a rational factfinder could have found Remmert guilty beyond a reasonable doubt. Accordingly, the State presented sufficient evidence to convict Remmert of aggravated criminal sodomy.

## DEPARTURE SENTENCE

Remmert argues that the district court abused its discretion when it denied his motion for a departure sentence under K.S.A. 21-4643(d) because a substantial and compelling reason existed to justify granting the motion—namely, he did not have a significant criminal history.

A district court abuses its discretion if the judicial action:

"(1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132

S. Ct. 1594 (2012) (citing *State v. Gonzalez*, 290 Kan. 747, 755-56, 234 P.3d 1 [2010]).

## Applicable Facts

Prior to sentencing, Remmert filed a motion requesting a departure sentence. This motion was not included in the record on appeal. According to arguments made by Remmert's counsel at sentencing, the basis for the departure request was Remmert's lack of a significant criminal history (a presentence investigation determined that Remmert's criminal history score was I). Remmert requested a departure sentence based on the applicable gridbox of the sentencing guidelines (gridbox I-I).

The district court denied Remmert's departure motion based on its view that Remmert's minor criminal history did not outweigh the fact that in committing his current crime, he took advantage of a young child living in his home and that he had not displayed any remorse for his crime. Accordingly, pursuant to Jessica's Law, the district court sentenced Remmert to a hard 25 life sentence.

## Analysis

Jessica's Law provides that a first-time offender convicted of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1) must be sentenced to life imprisonment with a minimum term of not less than 25 years "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." See K.S.A. 21-4643(d). K.S.A. 21-4643(d) provides a nonexclusive list of mitigating circumstances a district court may consider when deciding whether to depart from the statutorily prescribed sentence. One of the mitigating circumstances listed is: "The defendant has no significant history of prior criminal activity." K.S.A. 21-4643(d)(1).

A district court, however, is not obligated to depart simply because a mitigating factor exists. Rather, a district court has the discretion to either grant or deny the request. In exercising this discretion, a district court first reviews the mitigating circumstances and then weighs those circumstances against any aggravating circumstances, ultimately determining whether substantial and compelling reasons warrant a departure. See *State v. Baptist*, 294

Kan. 728, 734, 280 P.3d 210 (2012). But Jessica's Law does not require a district court to state the reasons why it denied a departure motion; the statute only requires that the district court state on the record the substantial and compelling reasons for why it granted a departure motion. See K.S.A. 21-4643(d); *Baptist*, 294 Kan. at 735.

Without the second or third bases of the abuse of discretion standard at issue, Remmert essentially asserts no reasonable person would have agreed with the district court's decision to deny the departure motion in light of the single mitigating factor he asserted in support of the motion. But based on the nature of Remmert's current crime of conviction and evidence indicating that he engaged in similar conduct in the past, we conclude that a reasonable person could agree that denying the departure motion and imposing a hard 25 life sentence pursuant to Jessica's Law was appropriate. Accordingly, we conclude that the district court did not abuse its discretion by denying Remmert's departure motion.

Affirmed.