No. 110,150

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AMANDA GROTTON,
*Appellant.*

SYLLABUS BY THE COURT

1.

The double rule of K.S.A. 21-4720(b) does not apply to off-grid sentences. Subsection (b)(2) provides that when grid and off-grid sentences run consecutively, the offender serves the off-grid sentences first and does not begin to serve the grid sentence until paroled from the off-grid sentence. Because the primary crime cannot be an off-grid crime, the double rule applies to the grid crimes *after* the defendant serves his or her off-grid sentence and does not limit the off-grid sentences. Where off-grid and on-grid sentences all run concurrent with each other, the grid sentence is subsumed into the off-grid sentence, and the double rule does not come into play.

2.

A district court abuses its discretion in sentencing if it makes a legal error about the factors it may consider. Remand for resentencing in such a case is appropriate if there is a reasonable probability that the district court would have made a different sentencing decision but for the legal error.

Appeal from Neosho District Court; DARYL D. AHLQUIST, judge. Opinion filed October 17, 2014. Sentence vacated and case remanded.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, for appellee.

Before LEBEN, P.J., PIERRON and STEGALL, JJ.

LEBEN, J.: Amanda L. Grotton pled guilty to the rape and sexual exploitation of her 4-year-old daughter based on a video—that she alleged her boyfriend forced her to make—depicting Grotton inserting her fingers and dildos into her daughter's vagina. Grotton was sentenced to two concurrent life sentences without the possibility of parole for 25 years and to a concurrent 6-month sentence for obstructing a police officer's official duty during her arrest. In Kansas, many criminal sentences—including obstructing official duty—are determined by putting a defendant's crime and criminal history into a sentencing grid. Sentences for certain more serious crimes—including the rape of a child and the sexual exploitation of a child—are indeterminate sentences (with a required minimum number of years of incarceration) not found in the grid.

On appeal, Grotton argues that her off-grid life sentences are illegal under the double rule, which provides that a defendant sentenced for multiple convictions can generally only be required to serve a maximum sentence double the length of the sentence of the defendant's primary crime. K.S.A. 21-4720(b)(4). She claims that because she has multiple convictions, she should have received a 12-month sentence (or twice her 6-month sentence for her primary crime—obstructing official duty). But when we look at the Kansas Sentencing Guidelines Act as a whole, we find that the legislature did not intend for the double rule to apply to off-grid crimes. If it did, it would lead to an absurd result—the double rule would limit Grotton's sentence to 12 months, while someone

2

convicted of the same off-grid crimes but not an additional grid crime would serve life sentences.

Grotton also argues that the district court made a legal error by concluding it couldn't consider her criminal history in deciding whether to grant a departure from her life sentences. The court stated that it believed that the impact of prior criminal history was "up to the legislature" and that it wasn't the court's "place to substitute [its] judgment with respect to the value of prior criminal history." Because K.S.A. 21-4643(d)(1) lists "no significant history of prior criminal activity" as a factor that can be a substantial and compelling reason for a court to depart, we remand the case so that the district court can reconsider a departure using the correct legal standard.

FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Grotton pled guilty to the rape and sexual exploitation of her 4-year-old daughter, both off-grid person felonies, for placing her fingers and two dildos in her daughter's vagina in November 2008. The State had a video depicting the events, and Grotton alleged that her boyfriend forced her to make the video when he was not present. Grotton also pled guilty to obstructing official duty, a severity-level-9 nonperson felony, for intentionally resisting a police officer when he tried to arrest her on the charges for rape and sexual exploitation of a child in March 2011.

Before sentencing, Grotton filed a motion requesting a downward-durational departure to obtain a shorter sentence. In a sentencing memorandum, Grotton acknowledged that her presumptive sentence would have been 25 years of incarceration if she had pled guilty to only the off-grid crimes. But she argued that since she pled guilty to obstructing an official duty, that crime is her primary offense, and under the double rule—which provides that the total prison sentence the sentencing court imposes cannot exceed twice the base sentence—her total controlling sentence could be no more than

3

twice her maximum sentence for obstructing official duty, or 12 months. K.S.A. 21-4720(b)(4). The district court ruled that the double rule did not apply in Grotton's case because it only covers grid crimes and would cause an absurd result if applied to off-grid crimes.

The court sentenced Grotton to two concurrent life sentences without the possibility of parole for 25 years for rape and sexual exploitation of a child and to a concurrent 6-month sentence for obstruction of an official duty. Grotton now appeals to this court.

ANALYSIS

*Grotton's Sentence Is Not Illegal.*

A criminal sentence is illegal if it is imposed by a court without jurisdiction, if it doesn't conform to the character or the term of punishment imposed by the statutory provision, or if it is ambiguous with regard to when and how it must be served. *State v. Bradford*, 299 Kan. 288, 289, 323 P.3d 168 (2014). The Jessica's Law statute sets out sentences for child-sex-abuse cases. It provides that first-time offenders convicted of rape of a child under 14 years old or sexual exploitation of a child must be sentenced to life imprisonment with a minimum term of 25 years unless the sentencing judge finds substantial and compelling reasons to depart and impose a lesser sentence. K.S.A. 21-3502; K.S.A. 21-3516; K.S.A. 21-4643(a)(1), (d).

Grotton argues that her life sentences are illegal because they do not conform to the double rule set out in K.S.A. 21-4720(b)(4). The double rule provides that a defendant sentenced for multiple convictions can generally only be required to serve a maximum sentence double the length of the sentence for her primary crime, which is the grid crime with the highest severity ranking:

4

"In cases where consecutive sentences may be imposed by the sentencing judge, the following shall apply:

. . . .

"(2) The sentencing judge must establish a base sentence for the primary crime. The primary crime is the crime with the highest crime severity ranking. An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences. If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime. . . .

. . . .

"(4) The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence. This limit shall apply only to the total sentence, and it shall not be necessary to reduce the duration of any of the nonbase sentences imposed to be served consecutively to the base sentence." K.S.A. 21-4720(b)(2), (4).

Grotton contends that because an off-grid crime cannot be used as the primary crime, her primary crime was obstructing official duty, and under the double rule, she could only be sentenced to 12 months (or twice her 6-month sentence for obstructing official duty). See K.S.A. 21-3808(b)(1); K.S.A. 21-4720(b)(2).

In determining whether the double rule limits Grotton's sentence to 12 months, we must interpret K.S.A. 21-4720, which is a legal question that we review independently, without any required deference to the district court. *Fisher v. DeCarvalho*, 298 Kan. 482, 492, 314 P.3d 214 (2013); *State v. Ross*, 295 Kan. 1126, 1130-31, 289 P.3d 76 (2012). When interpreting a statute, we first determine the legislature's intent through the statute's

language, by giving words their ordinary meaning. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). If the language is unclear, we use canons of construction, legislative history, or other background considerations to determine what the statute means. 296 Kan. at 918. Even when statutory language is clear, however, we may consider certain canons of construction. We may review the provisions of an act with a view of reconciling them and construe statutes to avoid "unreasonable or absurd results." *Northern Natural Gas Co.*, 296 Kan. at 918.

Let's begin our analysis by reviewing what K.S.A. 21-4720 tells us about Grotton's case. First, under K.S.A. 21-4720(a) and (b), except in certain circumstances not applicable here, the district court has discretion to impose concurrent or consecutive sentences. Here the district court imposed concurrent grid and off-grid sentences. Second, under K.S.A. 21-4720(b)(2), a defendant's primary crime is the crime with the highest severity ranking and cannot be an off-grid crime. Thus, Grotton's primary crime was her grid felony—obstructing official duty. Accordingly, if the double rule applies to off-grid crimes, Grotton's sentence should be limited to 12 months under the rule. K.S.A. 21-4720(b)(4).

When we apply the statutory-interpretation rules noted in *Northern Natural Gas* and look at the Kansas Sentencing Guidelines Act as a whole, however, we find that the double rule in K.S.A. 21-4720(b)(4) does not apply to off-grid crimes. First, applying the double rule to Grotton's off-grid sentences would necessarily violate another section of the sentencing guidelines, K.S.A. 21-4643(a)(1)(B), (F), which requires that defendants who are at least 18 years old and are convicted of rape of a child or sexual exploitation of a child be imprisoned for not less than 25 years.

Second, if the double rule applied to off-grid crimes and the court imposed only two consecutive life sentences without the possibility of parole for 25 years, it would be

6

impossible to calculate the maximum sentence permitted under the double rule because life sentences are indeterminate.

Moreover, applying the double rule to consecutive grid and off-grid sentences would lead to an absurd result. Even Grotton acknowledges this—if the double rule limits her sentence to 12 months, a person who is only convicted of the off-grid offense would serve a life sentence while she would serve only 12 months by virtue of also committing an *additional grid crime*. See K.S.A. 21-3502(c); K.S.A. 21-3516(c); K.S.A. 21-4706(d); *Northern Natural Gas*, 296 Kan. at 918.

A more reasonable interpretation of K.S.A. 21-4720(b) is that grid and off-grid sentences are handled separately. Section (b)(2) provides that when grid and off-grid sentences run consecutively, the offender serves the off-grid sentences first and does not begin to serve the grid sentence until paroled from the off-grid sentence. Because the primary crime cannot be an off-grid crime, the double rule applies to the grid crimes *after* the defendant serves his or her off-grid sentence and does not limit the off-grid sentences. K.S.A. 21-4720(b)(2). In cases where the sentences all run concurrent to each other—as is the case here—the grid sentence is subsumed into the off-grid sentence, and the double rule does not come into play. Under this reasonable interpretation of K.S.A. 21-4720(b), the double rule does not apply to Grotton's off-grid sentences, and her total sentence was not illegal.

*The District Court Abused Its Discretion in Denying Grotton's Motion for a Downward-Durational Departure by Basing Its Decision on an Erroneous Legal Conclusion.*

Grotton also argues that the district court abused its discretion in denying her motion for a durational departure (to a shorter sentence) from her off-grid sentences. When a defendant is convicted of rape of a child or sexual exploitation of a child, she automatically receives a hard 25 life sentence; to receive a more lenient sentence, she

must establish a substantial and compelling reason. K.S.A. 21-4643(a)(1), (d); *State v. Baptist*, 294 Kan. 728, 734, 280 P.3d 210 (2012). Grotton requested a more lenient sentence, and K.S.A. 21-4643(d) provides a nonexclusive list of mitigating factors for the sentencing court to consider when deciding whether to depart from her presumed life sentences:

> "[M]itigating circumstances shall include, but are not limited to, the following:

> (1) The defendant has no significant history of prior criminal activity.

> (2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

> (3) The victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

> (4) The defendant acted under extreme distress or under the substantial domination of another person.

> (5) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

> (6) The age of the defendant at the time of the crime."

The district court considers whether the mitigating circumstances are substantial and compelling reasons to depart on a case-by-case basis. *State v. Rochelle*, 297 Kan. 32, 46, 298 P.3d 293, *cert. denied* 134 S. Ct. 270 (2013). It is not obligated to depart just because a mitigating factor exists. *State v. Remmert*, 298 Kan. 621, 630, 316 P.3d 154 (2014).

At sentencing in Grotton's case, the court stated that Grotton's mental impairment was not a substantial and compelling reason for departure when weighed against

Grotton's breach of her duty to care for her daughter. The court said that "standing alone," Grotton's "significant mental health issues" would have "probably be[en] a substantial and compelling reason to depart" but that the mental-health issues were "cancelled out or set off" by the fact that Grotton had had a duty to provide "care, safety, kindness, guidance, security, . . . love and . . . protection" for her daughter and had failed to do so.

The court also stated that Grotton's limited criminal history was not a substantial and compelling reason for departure and that the impact of prior criminal history on sentencing was something for the legislature to decide:

"[Grotton] does have a minimal or a very minimal criminal record and, in fact, no prior felonies. But, again, this, standing alone, I don't find to be a substantial and compelling reason to depart.

"The Kansas legislature sets up sentencing guidelines for both on-grid and off-grid felonies. In the on-grid or cases that are sentenced under the Kansas Sentencing Guideline Act, the legislature has obviously determined that a—that one's prior criminal history should be a major consideration.

"In fact, in many cases, the prior criminal record determines whether it's a presumptive probation case or whether it's a presumptive incarceration case, whether you fall in a border box and things of that nature. And, in all cases, the greater your record, the higher the sentence in terms of months.

"With respect to off-grid crimes, however, the legislature has deemed that off-grid crimes are deemed to be so serious that . . . there is a presumption of a . . . life sentence . . . without regard to the defendant's criminal record.

"In my mind these are matters that are up to the legislature. If the legislature had in fact intended to distinguish between Jessica's Law off-grid convictions where there is a prior record or where there is not, they could have easily said that you'd be eligible for parole after 20 years versus 25 or 15 or 10. So I don't believe that it's my place to

9

substitute my judgment with respect to the value of prior criminal history. So, again, I don't find that that's a substantial and compelling reason to depart."

We review the court's denial of the departure motion for an abuse of discretion. *Remmert*, 298 Kan. at 629. The district court abuses its discretion if its decision is based on an error of fact or law or if no reasonable person would agree with the court's discretionary judgment call. 298 Kan. at 629. Grotton argues that the district court made two legal errors when it decided to deny her motion for a downward-durational departure: weighing the mitigating factors against the aggravating factors in her case and erroneously concluding that criminal history can't be a mitigating factor.

First, did the district court err in weighing both mitigating *and* aggravating factors in Grotton's case? K.S.A. 21-4643(d) provides that "the sentencing judge shall impose the mandatory minimum term of imprisonment . . . unless the judge finds substantial and compelling reasons, following a review of *mitigating* circumstances, to impose a departure." (Emphasis added.) Grotton argues that the statute doesn't allow the district court to weigh aggravating factors against mitigating ones. But the Kansas Supreme Court has said that when the district court decides whether to depart in child-sex-abuse cases, it considers both mitigating *and* aggravating circumstances: "In exercising this discretion [to either grant or deny a departure], a district court first reviews the mitigating circumstances and then weighs those circumstances against any aggravating circumstances, ultimately determining whether substantial and compelling reasons warrant a departure." *Remmert*, 298 Kan. at 630; see *Baptist*, 294 Kan. at 734.

Grotton asks us to find that the Kansas Supreme Court cases were wrongly decided, but we are duty bound to follow the Supreme Court's precedent when there is no indication that it is departing from its position. *State v. Acevedo*, 49 Kan. App. 2d 655, 670, 315 P.3d 261 (2013), *petition for rev. filed* December 23, 2013. Accordingly, we

10

find the sentencing court did not err in weighing both mitigating and aggravating factors in Grotton's case.

Second, did the district court fail to consider Grotton's limited criminal history in deciding whether to grant her a departure? Grotton argues that the district court's statements showed that it incorrectly believed that an offender's lack of significant criminal history, which is one of the mitigating factors in K.S.A. 21-4643, can *never* serve as a mitigating factor favoring departure.

Grotton contends her case should be remanded for resentencing under *State v. Randolph*, 297 Kan. 320, 301 P.3d 300 (2013). In *Randolph*, the district court had applied the wrong list of mitigating factors in ruling on a defendant's departure motion in a Jessica's Law case. 297 Kan. at 336. Two of the factors in the Jessica's Law statute—age and limited criminal history—had not been on the list of factors the court had applied. 297 Kan. at 337. The Kansas Supreme Court found that there was a reasonable probability that a sentencing judge would have given more weight to the two factors if he had recognized that the legislature intended they be considered in Jessica's Law cases, even though sentencing courts are not required to state the reasons for denying a departure motion. 297 Kan. at 337.

We agree with Grotton and find that the court's statements that the impact of prior criminal history on sentences for rape and sexual exploitation of a child "are matters that are up to the legislature" and that it wasn't the court's "place to substitute [its] judgment with respect to the value of prior criminal history" are at odds with K.S.A. 21-4643(d)(1), which lists "no significant history of prior criminal activity" as a factor that can be a substantial and compelling reason to depart. See *Rochelle*, 297 Kan. at 47-48 (holding that a sentencing court can grant a departure relying solely on a lack of criminal history). The district court's statements indicate that it erroneously concluded that it could not consider prior criminal history as a mitigating factor. And since the district court found

11

Grotton's mental-health issues to be significant, if it had considered prior criminal history, it might have found that the mental-health issues and limited criminal history together outweighed the aggravating factor—that Grotton failed in her duty to provide "care, safety, kindness, guidance, security, . . . love and . . . protection" for her daughter.

We therefore conclude that the case should be remanded for the district court to give further consideration to the sentence; the parties and this court should be confident that the court has made its sentence under a correct understanding of the applicable statutes. See *Randolph*, 297 Kan. at 337-38 (remanding for resentencing where there was a "reasonable probability" district court might have given different weight to sentencing factors if it had correctly applied the law); *State v. Sherman*, No. 109,244, 2014 WL 902151, at *2-4 (Kan. App. 2014) (unpublished opinion) (remanding for resentencing where some mitigating factors not considered applicable by district court could have been proper basis for departure sentence).

The district court's judgment is affirmed except for the sentence, which is vacated. The case is remanded for resentencing.