NOT DESIGNATED FOR PUBLICATION

No. 116,608

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WENDELL E. TUMBERG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed August 10, 2018.
Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.

BUSER, J.:  Wendell E. Tumberg appeals the sentences imposed upon his
convictions of four off-grid felony counts of aggravated indecent liberties with a 9-year-
old child. He raises four issues on appeal. First, Tumberg contends the State violated the
plea agreement by arguing the "double rule" of K.S.A. 2017 Supp. 21-6819(b)(4) would
apply if the district court departed from the presumptive life sentences without the
possibility of parole for 25 years (Hard 25 life sentences). Second, Tumberg claims the
district court violated K.S.A. 2017 Supp. 21-6627(d) as interpreted by *State v. Jolly*, 301
Kan. 313, 342 P.3d 935 (2015) when denying his departure motion.

1

Tumberg's third contention is that the district court abused its discretion by making an error of law regarding the procedure required to impose the departure sentences he requested. Finally, Tumberg asserts the district court abused its discretion by finding that no substantial and compelling reasons existed for departing from the Hard 25 life sentences. Upon our review, we find no error by the district court and affirm the sentences.

FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2015, Tumberg's girlfriend and her 9-year-old daughter, A.R., moved in with him. During the next 19 days, Tumberg sexually assaulted A.R. several times. After his girlfriend saw Tumberg and A.R. together in a bathtub, A.R. was taken to a hospital. A sexual assault examination revealed that A.R. had redness on her vaginal area.

When interviewed, A.R. described the incident in the bathtub. She explained that she was sitting between Tumberg's legs and Tumberg had his finger in her vagina. A.R. reported that Tumberg would kiss and lick her mouth and cheeks. According to A.R., Tumberg made her touch his penis and he would sometimes touch her chest.

In addition to the bathtub incident, A.R. recounted three specific occasions when Tumberg touched her vagina while they were on a couch. A.R. explained that Tumberg would sit next to her in his underwear and touch her vagina "a lot," rubbing his hand up and down her vaginal area. Tumberg would put his hand in A.R.'s underwear, put his finger inside her vagina, and move his finger up and down. Tumberg told his girlfriend that he was teaching A.R. how to masturbate.

Pursuant to a plea agreement with the State, Tumberg pled guilty to four counts of aggravated indecent liberties with a child. In exchange for Tumberg's pleas, the State agreed to recommend a departure from the Hard 25 life sentences to the aggravated

sentences for the crimes as provided by the Kansas Sentencing Guidelines Act (KSGA). The written basis for the departure was Tumberg's acceptance of responsibility and lack of significant criminal history. Under the agreement, Tumberg was allowed to argue for less prison time than recommended by the State. The plea agreement provided, however, that "[b]oth parties will recommend the counts run consecutively to each other."

Tumberg's presentence investigation (PSI) report listed his criminal history score as I. The PSI stated that, if granted a departure to the sentencing grid, Tumberg's crimes would be classified as severity level 3 offenses. Accordingly, if the district court departed to the sentencing grid, each count would carry a mitigated sentence of 55 months in prison and an aggravated sentence of 61 months.

Before sentencing, Tumberg moved for a departure from the presumptive Hard 25 life sentences. Tumberg raised several mitigating factors to support his departure motion, including:

- He displayed veracity, took responsibility for his actions, and admitted guilt.
- The State joined his request to depart to the sentencing grid.
- He had no prior felony or misdemeanor convictions.
- He had no history of inappropriate sexual behavior.
- A.R. acted in a sexualized manner towards him and he did not seek out the situational episodes that lead to his actions.
- A psychological evaluation revealed that he would not be a significant risk to the community when released.
- He was sexually abused as a child.

3

At sentencing, the State asked the district court to follow the plea agreement and depart to the sentencing grid but deny Tumberg's request for lesser sentences. The State argued that if the district court followed its recommendation, "[i]t's going to be a benefit to him that we have the double rule because the Court can only max him out at 122 months." In conclusion, the State asked the district court to "follow the plea agreement as it is outlined and sentence the defendant to the 122 months in prison."

While arguing in support of a departure sentence, Tumberg's attorney confirmed that he was asking for "the low number of 55-months, counts concurrent." In response to Tumberg's argument for concurrent sentences, the State asserted that under the plea agreement "both parties are asking the Court to run the counts consecutive up to the double rule, so whatever you choose as the base sentence, you can only double that." The State continued that Tumberg could not ask for concurrent sentences and was "stuck with consecutive counts." Tumberg's attorney acknowledged the plea agreement, but stated "we can ask for a further departure in the case. We're asking for a durational departure in addition to what the State's agreed for equivalent of concurrent counts."

Before announcing the sentence, the district court noted that Tumberg's departure motion was based "essentially on an acceptance of responsibility." The district court commented that Tumberg was requesting "essentially two departures"; first, a departure from the Hard 25 life sentences to the sentencing grid "and then a further departure."

The district court continued its remarks, noting that the State joined Tumberg in requesting a departure to the sentencing grid and seeking a 122-month total sentence. After considering the arguments of counsel, the district court declined to follow the plea agreement or the sentencing recommendations made by either Tumberg or the State. Instead, the district court found there were no substantial and compelling reasons to depart, imposed the Hard 25 life sentences for each count, and ran the sentences concurrently. The district judge reasoned:

4

"I do not believe that this was a momentary lapse of judgment. I believe that your behavior was more than that. I believe that this was repeated behavior on your part.

"It would be different if there was one charge but there [are] four off grid person felonies. The victim in this case is especially vulnerable. You mentioned that repeatedly in the evaluation with Dr. Nystrom. You were presented with an opportunity at that point, sir, to help this child. You knew she had been a victim in the past and you had an opportunity to help her. Instead you chose not to. Instead you chose the worst thing you could do, which was to victimize this child yet again, not just once but a number of times. That was a terrible decision.

"So this Court in sentencing states the following: I find the primary offense is Count 1 calling for a prison term of life, referred to sometimes as the Hard 25 and a postrelease supervision duration of life.

"With regard to the motion to depart, the Court did carefully consider the motion. This Court would have to find substantial and compelling reasons to depart from the sentence. There were a number of reasons to do that, but I cannot find them substantial and compelling."

Tumberg filed this timely appeal.

## VIOLATION OF PLEA AGREEMENT CLAIM

Tumberg first contends that the State violated the plea agreement when the prosecutor told the district court that the "double rule" would apply to his sentences. Of note, Tumberg did not argue the State misstated the law or otherwise violated the plea agreement at sentencing. That said, appellate courts may address claims that the State violated a plea agreement for the first time on appeal to prevent the denial of fundamental rights. *State v. Meyer*, 51 Kan. App. 2d 1066, 1071, 360 P.3d 467 (2015). Whether the State breached a plea agreement presents a question of law over which this court exercises unlimited review. *State v. Urista*, 296 Kan. 576, 582-83, 293 P.3d 738 (2013).

A plea agreement is a contract between the State and the defendant, and both parties must perform the promises they exchanged. *Santobello v. New York*, 404 U.S.

257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); *State v. Woodward*, 288 Kan. 297, 300, 202 P.3d 15 (2009). The parties to a plea agreement "must act fairly and in good faith in carrying out the promises they have made." *Urista*, 296 Kan. at 583. "If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process." 296 Kan. at 583. A due process violation occurs with any breach, even if the sentencing judge was not influenced by the State's statements at sentencing. 296 Kan. at 583.

"When the State promises, as part of a plea agreement, to recommend a particular sentence, due process demands action in conformity to the agreement." *State v. Chesbro*, 35 Kan. App. 2d 662, 675, 134 P.3d 1 (2006).

"There are at least two ways for the State to breach a promise to make a recommendation: (1) It can fail to make a sentencing recommendation to the district court that it promised it would make; or (2) it can make the recommendation but still breach the agreement by making additional comments at sentencing that effectively undermine its recommendation." *State v. Jones*, 302 Kan. 111, 116-17, 351 P.3d 1228 (2015).

Tumberg's claim of error is focused on the so-called double rule set out in K.S.A. 2017 Supp. 21-6819(b)(4):

"The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence. This limit shall apply only to the total sentence, and it shall not be necessary to reduce the duration of any of the nonbase sentences imposed to be served consecutively to the base sentence."

"The double rule provides that a defendant sentenced for multiple convictions can generally only be required to serve a maximum sentence double the length of the sentence for [the] primary crime, which is the grid crime with the highest severity

6

ranking." *State v. Grotton*, 50 Kan. App. 2d 1028, 1031, 337 P.3d 56 (2014). Under K.S.A. 2017 Supp. 21-6819(b)(2), however, an off-grid crime *may not be used* as the primary crime in determining the base sentence for the purposes of the double rule.

Under the plea agreement, the State was to recommend that the district court depart to the sentencing grid, sentence Tumberg to the aggravated number on the grid, and run the sentences consecutively. The plea agreement did not mention the double rule or address whether the rule applied to Tumberg's sentencing. The State recommended that Tumberg be sentenced to the aggravated number in the sentencing grid—61 months—and asked for the counts to run consecutively. But the State commented that if its recommendation was followed, the maximum sentence would be 122 months under the double rule.

Tumberg argues that the State violated the plea agreement because the double rule was not a part of and would not apply to the State's recommendation and, therefore, the State was required to recommend a 244-month total prison sentence to satisfy its obligations under the plea agreement.

Tumberg is correct that the State's suggestion that the double rule applied to his case was incorrect. Quite simply, the double rule does not apply to off-grid crimes. *Grotton*, 50 Kan. App. 2d at 1032. Moreover, a defendant convicted of a Jessica's Law crime remains convicted of an off-grid offense even when that defendant receives a departure from the Hard 25 life sentence. *State v. Spencer*, 291 Kan. 796, 826, 248 P.3d 256 (2011). As a result, Tumberg's sentence would not have been controlled by the double rule if the district court had granted a departure to the sentencing grid.

That said, while the State misstated the law at sentencing, Tumberg fails to show how these misstatements violated the plea agreement. The State faithfully followed the plea agreement by recommending a departure to the sentencing grid and consecutive 61-

7

month sentences on each count. Although the State's recommendations would have resulted in a 244-month total sentence absent any reduction, under the plea agreement the State was not precluded from mistakenly commenting on its understanding of the effect of its compliance with the terms of the plea agreement.

Under the plea agreement, the State was not obligated nor restricted in making any recommendation about Tumberg's total sentence. The double rule applies only to the defendant's total sentence and provides that it is unnecessary to reduce the duration of any consecutively running nonbase sentences. As a result, the State followed the plea agreement by recommending consecutive 61-month sentences for each count and this recommendation was not undermined by suggesting the double rule applied to reduce Tumberg's total sentence. Although the State was mistaken to assert the double rule applied under the circumstances, the State did not violate the plea agreement.

Next, for the sake of completeness, we consider the issue of harmless error. In this regard, assuming *arguendo* the State violated the plea agreement by recommending a lesser sentence than contemplated, we find such a violation was harmless. A breach of the plea agreement constitutes harmless error only if "a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement." *Urista*, 296 Kan. at 594-95. This harmless error analysis applies even when the defendant raises the issue for the first time on appeal. *Meyer*, 51 Kan. App. 2d at 1071.

We conclude beyond a reasonable doubt that any breached promise had no influence on Tumberg's decision to enter into the plea agreement. The crux of Tumberg's argument is that the State should have recommended a total sentence of 244 months under the plea agreement, but that the prosecutor violated the agreement by recommending the 122-month sentence. We find it implausible that Tumberg would have

8

been any less likely to accept the plea agreement without the understanding that the State was to refrain from recommending a reduction in his total sentences.

Indeed, Tumberg moved for a further sentence reduction, arguing that his circumstances justified an even shorter controlling sentence of 55 months. Such a motion confirms the obvious—Tumberg wished to serve the shortest prison sentence possible. Any understanding that the State was to refrain from arguing for the application of the double rule or otherwise seek to reduce Tumberg's total sentence clearly had no influence on Tumberg's decision to enter into the plea agreement. As a result, even if the State violated the plea agreement, any violation was harmless.

COMPLIANCE WITH THE *JOLLY* PROCEDURES

Tumberg next contends the district court violated the procedures of K.S.A. 2017 Supp. 21-6627(d) and *Jolly* when it considered his departure motion.

When reviewing a district court's ruling on a departure motion, we apply an abuse of discretion standard. *Jolly*, 301 Kan. at 324. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. *State v. Collins*, 303 Kan. 472, 477, 362 P.3d 1098 (2015).

The failure to follow the statutory methodology for considering a departure from a Jessica's Law case is an error of law and an abuse of discretion by the district court. *State v. Powell*, 53 Kan. App. 2d 758, 762, 393 P.3d 174 (2017), *rev. granted* 306 Kan. 1328 (2017). The party asserting the district court abused its discretion bears the burden of

9

showing the abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016), *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017).

Under K.S.A. 2017 Supp. 21- 6627(a)(1)(C), when a defendant over the age of 18 is convicted of aggravated indecent liberties with a child who is under 14, the defendant is to receive a Hard 25 life sentence. The district court must impose this presumptive sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2017 Supp. 21-6627(d)(1).

In *Jolly*, our Supreme Court held that courts may not weigh mitigating circumstances against aggravating circumstances when considering sentencing departures in Jessica's Law cases. 301 Kan. at 322. The *Jolly* court determined that

> "the proper statutory method when considering a departure from a Jessica's Law sentence is for the district court first to review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence. Finally, if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the district court must state on the record those substantial and compelling reasons." 301 Kan. at 324.

Although sentencing courts may not weigh aggravating factors against mitigating factors, "the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons." 301 Kan. at 323-24. The sentencing court "is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime. This

10

includes those 'circumstances inherent in the crime and the prescribed sentence.'" 301 Kan. at 324 (quoting *State v. Florentin*, 297 Kan. 594, 598, 303 P.3d 263 [2013]).

Tumberg argues the district court failed to satisfy the first step of *Jolly* because it did not first review the mitigating circumstances without weighing them against the aggravating circumstances. Tumberg specifically claims that the district court violated the *Jolly* methodology "[b]ecause there was not a time during sentencing that the court first considered all mitigating circumstances put forward by both the State and Mr. Tumberg."

As the State points out, Tumberg's reasoning suggests that *Jolly* requires a sentencing court to explicitly specify and discuss each mitigating factor put forward before determining whether there are substantial and compelling reasons to depart. This is a misunderstanding of the *Jolly* decision.

Specificity by the district court is not required when it denies a departure from a sentence imposed under Jessica's Law. *State v. Harsh*, 293 Kan. 585, 587, 265 P.3d 1161 (2011). Moreover, the district court need not expressly specify the mitigating factors the defendant presented when explaining its denial of the defendant's motion to depart. *State v. Mendoza*, 292 Kan. 933, 936, 258 P.3d 383 (2011). Nothing in *Jolly* suggests a modification of this precedent. See *State v. Ashbaugh*, No. 116,426, 2017 WL 5180845, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* December 11, 2017. As a result, contrary to Tumberg's reasoning, the district court was not required to specifically address each mitigating factor argued by Tumberg.

Although a district court does not need to enumerate all the mitigating factors considered, the record must demonstrate that the district court reviewed any mitigating circumstances without weighing them against aggravating circumstances. *State v. Anno*, No. 116,350, 2017 WL 3947380, at *5 (Kan. App. 2017) (unpublished opinion), *petition*

*for rev. filed* October 5, 2017. Compliance with this procedure is shown when the district court indicates it considered the mitigating circumstances and does not suggest that it improperly weighed any aggravating circumstances. *Ashbaugh*, 2017 WL 5180845, at *4.

For example, in *Ashbaugh*, our court held that a district judge did not violate the *Jolly* procedure when, after listening to the arguments for mitigation, it denied a departure, explaining:

> "'I find no substantial or compelling reason to depart from the sentence of life in prison. I'm not going to reiterate what I just heard, but I think they showed sufficiently the damage you have caused. . . . [n]ot only to the two young boys but to the extended family.'" *Ashbaugh*, 2017 WL 5180845, at *2.

The *Ashbaugh* court found that the first step of *Jolly* was satisfied because "[t]he sentencing judge indicated he had indeed listened to the proposed mitigating circumstances, although he declined to 'reiterate' what he had heard. His straightforward ruling gave no indication he had improperly considered or 'weighed' any 'aggravating circumstances.'" *Ashbaugh*, 2017 WL 5180845, at *4.

Similarly, the record in this case shows the district court satisfied the first step of the *Jolly* test by reviewing the mitigating circumstances without weighing them against aggravating circumstances. The district court indicated that it considered the proposed mitigating circumstances advanced by Tumberg in his departure motion. In explaining its decision, the district court noted that it carefully considered Tumberg's motion and disagreed with Tumberg's claim that he accepted responsibility for his actions. The district court acknowledged that Tumberg set forth "a number of reasons" to depart, but determined that it could not find them substantial and compelling.

12

The district court's ruling does not suggest it improperly weighed any aggravating factors against the mitigating factors. At no point did the district court explicitly characterize any evidence as an aggravating factor. When the district court referenced Tumberg's repeated criminal behavior, his knowledge of the victim's vulnerability, and his terrible decision making, it engaged in the second step of *Jolly*—whether the mitigating factors were substantial and compelling given the facts of the case. While these facts could be classified as aggravating factors, "the district court can consider things that could be classified as 'aggravating factors' in other cases as long as the district court does not call them 'aggravating factors.'" *State v. James*, No. 115,324, 2016 WL 7429525, at *4 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1325 (2017).

The district court did not violate the procedures mandated by *Jolly* when it denied Tumberg's motion for a sentencing departure.

### COMPLIANCE WITH OTHER SENTENCING PROCEDURES

Tumberg next contends the district court abused its discretion by misunderstanding the sentencing procedure required to grant the departure sentence he requested. Specifically, Tumberg argues the district court mistakenly believed that two departures were needed to impose a controlling sentence of 55 months.

An appellate court applies an abuse of discretion standard when reviewing a district court's decision on a departure motion. *State v. Floyd*, 296 Kan. 685, 687, 294 P.3d 318 (2013). Judicial action constitutes abuse of discretion if the action is based on an error of law. *Marshall*, 303 Kan. at 445.

Our Supreme Court has laid out a specific sentencing departure process for Jessica's Law cases. When a district court departs from the life sentence under K.S.A.

13

2017 Supp. 21-6627(d), it must first depart to the KSGA grid block appropriate to both the defendant's criminal history and "the severity level assigned to the crime when it lacks the element of disparity between the defendant's and the victim's ages." *Spencer*, 291 Kan. at 827.

Once the court departs from the life sentence to the appropriate grid block, the court may then further depart from the sentencing grid under the applicable provisions of the KSGA. *State v. Jackson*, 297 Kan. 110, 113, 298 P.3d 344 (2013). "[T]he requirements of neither the first step into the guidelines nor the second step away from the presumptive guidelines sentence can be ignored, and all departure procedures must be followed." *State v. Jolly*, 291 Kan. 842, 847, 249 P.3d 421 (2011).

In this case, if Tumberg had been granted a departure to the sentencing grid, the appropriate grid block carried a mitigated sentence of 55 months. Thus, the district court could have ordered a 55-month total sentence by departing from the Hard 25 life sentences to the sentencing grid and imposing concurrent mitigated sentences. As Tumberg argues, the district court was not required to make a second departure from the sentencing grid to impose his requested 55-month sentence. Even so, Tumberg fails to show that the district court believed two departures were necessary to obtain the reduced sentence he requested.

At sentencing, Tumberg's counsel confirmed that he was asking "for the low number of 55 months, counts concurrent." After the State told the district court that Tumberg could not ask for concurrent counts under the plea agreement, Tumberg's counsel replied, "What I was trying to say, Your Honor, is we can ask for a further departure in the case. We're asking for a durational departure in addition to what the State's agreed for equivalent of concurrent counts."

14

In its comments leading up to the sentence, the district court noted that Tumberg's counsel wrote an excellent departure motion, which was based primarily on acceptance of responsibility. The district judge then stated Tumberg's counsel "asks the Court to find substantial and compelling reasons to depart from the sentence. Well, I guess that's essentially two departures. First of all, departure from the life sentence and back on the grid. I'm sure he's explained that to you and then a further departure."

To establish an abuse of discretion, Tumberg must show that the district court's action was based on an error of law. We are persuaded that the district court was merely summarizing Tumberg's argument for a sentencing departure, not its own understanding of the departure procedures it would have had to use to order Tumberg's requested controlling sentence.

Because Tumberg had agreed to recommend consecutive sentences, he was precluded from asking for concurrent 55-month sentences. As a result, to obtain the controlling sentence he desired, Tumberg had to ask for a further departure from the grid. The district court was summarizing this argument when it noted that Tumberg's counsel asked for "essentially two departures." Tumberg fails to show that the district court abused its discretion by misunderstanding the procedures required to sentence him to his requested controlling sentence.

Moreover, even if the district court erroneously believed that a second departure was required, this error was harmless. When an error implicates a statutory but not federal constitutional right, the party benefiting from the error must persuade the court that there is no reasonable probability that the error affected the outcome in light of the entire record for it to be considered harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

15

Here, assuming *arguendo* the district court erred, this error would have caused the district court to believe that two steps were needed to impose the controlling sentence sought by Tumberg. However, the district court determined that no substantial and compelling reasons warranted a departure from a life sentence to the sentencing grid. Quite simply, the district court did not get past the first step, which it was correct to apply. As a result, there was no occasion for the district court to apply the second step. In other words, it is irrelevant regarding whether the district court believed that it had to make a second departure because it never made the first departure. Accordingly, there is no reasonable probability the claimed error affected the outcome of the sentencing.

SUBSTANTIAL AND COMPELLING REASONS FOR A DEPARTURE

Tumberg's final argument is that the district court abused its discretion by finding there were not substantial and compelling reasons to depart from the Hard 25 life sentences.

When reviewing a district court's determination of whether mitigating circumstances present substantial and compelling reasons to depart from a Jessica's Law sentence, we use an abuse of discretion standard. *Jolly*, 301 Kan. at 325. Judicial action constitutes an abuse of discretion if no reasonable person would take the view adopted by the district court. *Marshall*, 303 Kan. at 445.

As previously explained, in Jessica's Law cases, the district court must impose a Hard 25 life sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2017 Supp. 21-6627(d)(1). As used in the statute, the term "substantial" means something real and not imagined; something with substance and not ephemeral. "Compelling" means that the court is forced, by the facts of the case, to leave the status quo or go beyond what is ordinary. *Jolly*, 301 Kan. at 323.

16

K.S.A. 2017 Supp. 21-6627(d) contains a nonexclusive list of six mitigating factors for a court to consider when deciding whether to depart from a life sentence. The existence of mitigating factors does not necessarily equate to substantial and compelling reasons to depart. *Jolly*, 301 Kan. at 323. "Nor is each mitigating factor required to sufficiently justify a departure by itself, so long as the collective factors constitute a substantial and compelling basis for departure." *Hars*h, 293 Kan. at 587. There is no formula for the analysis of the mitigating factors raised, and sentencing courts do not simply tally the total number of mitigating factors. 293 Kan. at 587.

The district court was well within its discretion when it denied Tumberg's departure motion. In support of this conclusion, our Supreme Court has upheld the denial of departure motions based on similar mitigating factors raised by Tumberg. See e.g., *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010) (upholding denial of departure motion despite the defendant's claims that he took responsibility for his actions, the sexual acts were not committed forcefully, lack of significant prior criminal record, and he was only 30 years old at the time of the offense); *State v. Reyna*, 290 Kan. 666, 689-90, 234 P.3d 761 (2010), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016) (upholding denial of departure motion even though an evaluation found no evidence of pedophilia, the evaluator did not consider the defendant to be a threat to the community, and lack of criminal history); *State v. Spotts*, 288 Kan. 650, 655-56, 206 P.3d 510 (2009) (upholding district court's denial of a departure motion although defendant had no prior sexually motivated crimes, he took responsibility for his action, plea saved victim from testifying at trial, and sexual actions were not committed by force or threat).

We find that reasonable persons could conclude that the offered mitigating circumstances did not amount to substantial and compelling reasons to depart given the facts of the case. The victim in this case was nine years old. Tumberg victimized A.R. on

four separate occasions, once in a bathtub and three times on a couch. As the district court found, Tumberg's actions did not suggest a momentary lapse of judgment.

A reasonable person could conclude, as did the district court, that no substantial and compelling reasons existed to justify a departure sentence. Accordingly, we find the district court acted within its discretion, and we affirm the sentences imposed in this case.

Affirmed.