IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,254

STATE OF KANSAS,
*Appellee*,

v.

DEVAWN T. MITCHELL,
*Appellant*.

SYLLABUS BY THE COURT

1.

A party who raises a claim concerning a criminal defendant's competence to stand trial bears the burden of proving that claim by a preponderance of the evidence.

2.

Courts presume a criminal defendant is competent to stand trial.

3.

An appellate court reviews a district court's decision to order an evaluation under K.S.A. 2020 Supp. 22-3429 for abuse of discretion.

4.

For purposes of K.S.A. 2022 Supp. 21-6819(b), a life sentence cannot be either a base or a nonbase sentence.

5.

Nothing in the plain language of K.S.A. 2022 Supp. 21-6620(b)(2) converts a life sentence into a grid sentence.

1

Appeal from Lyon District Court; W. LEE FOWLER, judge. Oral argument held May 17, 2023. Opinion filed December 8, 2023. Affirmed.

*Kurt P. Kerns,* of Kerns Law Group, of Wichita, argued the cause and was on the brief for appellant.

*Carissa Brinker*, assistant county attorney, argued the cause, and *Marc Goodman*, county attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Devawn T. Mitchell appeals from his bench trial convictions for first-degree felony murder, aggravated assault on a law enforcement officer, two counts of felony fleeing and eluding, and misdemeanor fleeing and eluding. Mitchell claims the district court erred by finding him competent to stand trial, by failing to obtain a psychological evaluation under K.S.A. 2020 Supp. 22-3429 before sentencing him, and by applying his "B" criminal history score to a nonbase offense to increase his mandatory minimum sentence. We find no error and affirm Mitchell's convictions and sentence.

## FACTS AND PROCEDURAL HISTORY

The parties do not dispute the facts. In short, over the afternoon of March 18, 2021, Mitchell committed traffic infractions that led to several short, isolated pursuits by law enforcement in Emporia. The afternoon's events, which began when Mitchell swerved at a police car, tragically ended about an hour later when Mitchell's car slammed into Steven Henry's truck, killing Henry.

The State charged Mitchell with five counts over the incident, including first-degree felony murder and aggravated assault of a law enforcement officer. Mitchell's

counsel filed a pretrial notice of lack of intent due to mental disease or defect and told the district court that Mitchell had an "extensive history of psychiatric illness and hospitalization." But after hearing back from the psychologist contracted by the defense to evaluate Mitchell, Mitchell's counsel withdrew the notice. Mitchell also waived his right to a jury trial.

The district court held a two-day bench trial. Mitchell presented no evidence. The district court examined each charge on the record and found Mitchell guilty on all counts.

After trial, Mitchell's counsel filed a motion to determine competency. The district court ordered a competency evaluation with Crosswinds. After Crosswinds submitted its report, the district court found Mitchell competent. We will discuss the facts surrounding this motion, including the evaluation report, in greater detail below.

The district court sentenced Mitchell to a life sentence with a minimum 554 months before parole eligibility, followed by a consecutive controlling 39-month sentence for Mitchell's remaining convictions. Mitchell directly appealed to this court.

ANALYSIS

*Mitchell failed to carry his burden of proving his incompetency to stand trial.*

Mitchell first argues the district court erred by finding him competent to stand trial. He focuses on one line from the Crosswinds report, arguing that it set forth conditions on his competency and that the district court failed to ensure that those conditions were met at all critical stages of the case.

3

*Standard of review*

"An appellate court applies an abuse of discretion standard when determining whether a district court made the correct decision regarding a defendant's competency to stand trial. 'Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact.' [Citations omitted.]" *State v. Marshall*, 303 Kan. 438, 444-45, 362 P.3d 587 (2015).

"[A] party who raises the issue of competence to stand trial has the burden of going forward with the evidence, which will be measured by the preponderance of the evidence standard." *State v. Cellier*, 263 Kan. 54, 70, 948 P.2d 616 (1997). We have also recognized "a presumption that the defendant is competent." *State v. Woods*, 301 Kan. 852, 860, 348 P.3d 583 (2015).

*Additional facts*

Mitchell's counsel filed a posttrial motion to determine competency, which prompted the district court to order a competency evaluation with Crosswinds. After two interviews, Crosswinds issued an evaluation report diagnosing Mitchell with schizophrenia. The report documented:

"Mr. Mitchell demonstrates likely auditory hallucinations that persecute him during the day hours or instructs [*sic*] him to misbehave. He has paranoia, hypersexual behaviors, social isolation, bizarre behaviors, combative and argumentative behaviors without any seeming trigger, hostility, outbursts of anger, screaming, threatening statements and actions. He appears extremely immature and lacks ability to understand consequences to his own behaviors."

Despite this diagnosis, the report concluded that Mitchell was "competent." While the report noted the "unusual" difficulty of the assessment and that "Mr. Mitchell clearly is mentally ill or has mental deficiencies that cause his significant struggles," it concluded that:

> "Despite these concerns regarding his mental health or possible cognitive struggles, overall, he does possess the ability to understand the legal process and participate adequately in his own defense *if given coaching and support*. He does understand that he could be facing a prison sentence given his current conviction and does express a normal fear and depression that this consequence may occur. While his behavioral response seems unpredictable and could be highly inappropriate, he does demonstrate the ability to control this. Ultimately, it does appear that Mr. Mitchell is competent to stand trial and/or to participate adequately in his sentencing advocacy." (Emphasis added.)

During a short hearing, the district court accepted the competency evaluation report. After the district court gave the parties a chance to present additional evidence—which neither chose to do—the court found the defendant "competent based upon the findings in the report." It then set the matter for sentencing.

*Discussion*

"'[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.'" *State v. Ford*, 302 Kan. 455, 461, 353 P.3d 1143 (2015). Under this due process umbrella, Mitchell raises both procedural and substantive competency claims. Our court has explained the difference between these two claims.

"A procedural competency claim falls under K.S.A. 22-3302 and is generally based upon the district court's alleged failure to hold a competency hearing or its failure

5

to hold an adequate competency hearing. A substantive competency claim alleges the defendant was tried and convicted while, in fact, incompetent." *State v. Stewart*, 306 Kan. 237, 252, 393 P.3d 103 (2017).

In assessing a procedural competency claim, due process is satisfied if the court adheres to the statutory framework set forth in K.S.A. 2022 Supp. 22-3302. *Woods*, 301 Kan. at 859; *State v. Barnes*, 263 Kan. 249, 262-63, 948 P.2d 627 (1997). In assessing a substantive competency claim, due process is satisfied if substantial competent evidence supports a finding of actual competency. *Woods*, 301 Kan. at 860.

Mitchell's procedural competency claim is without support in the record. K.S.A. 2022 Supp. 22-3302 states:

"(a) At any time after the defendant has been charged with a crime and before pronouncement of sentence, the defendant, the defendant's counsel or the prosecuting attorney may request a determination of the defendant's competency to stand trial. If, upon the request of either party or upon the judge's own knowledge and observation, the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial, the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant.

"(b) If the defendant is charged with a felony, the hearing to determine the competency of the defendant shall be conducted by a district judge.

"(c)(1) The court shall determine the issue of competency . . . . The court may order a psychiatric or psychological examination of the defendant. . . .

. . . .

(4) Upon notification of the court that a defendant committed for psychiatric or psychological examination under this subsection has been found competent to

6

stand trial, the court shall order that the defendant be returned no later than seven days after receipt of the notice for proceedings under this section. . . .

"(d) If the defendant is found to be competent, the proceedings that have been suspended shall be resumed. . . .

. . . .

"(f) If proceedings are suspended and a hearing to determine the defendant's competency is ordered after the defendant is in jeopardy, the court may either order a recess or declare a mistrial.

"(g) The defendant shall be present personally at all proceedings under this section."

Here, the district court both ordered a competency evaluation and held a hearing after receiving the report from Crosswinds. The district court admitted the report into evidence without objection and offered both parties the opportunity to present additional evidence. Neither party did so. In short, the district court followed the proper procedure.

We now turn to Mitchell's substantive competency claim alleging he was tried and convicted while incompetent. In support of this claim, Mitchell argues the district court ignored the facts set forth in the Crosswinds report. He focuses on the evaluation report's qualification that "he does possess the ability to understand the legal process and participate adequately in his own defense *if given coaching and support*." (Emphasis added.) Mitchell argues that the report showed he was only conditionally competent and complains that the record lacks evidence that he had "coaching and support" during all critical stages of pretrial and trial proceedings.

We disagree. Mitchell bore the burden of proof to show he had *not* been provided such coaching and support. The record does not explain exactly what is meant by

7

"coaching and support," but the report's narrative undermines the weight Mitchell places on the phrase:

> "In our second contact with Mr. Mitchell, we explained the importance of being able to complete this assessment to make a case on his behalf about possible placement besides prison as he has been strongly advocating that he needs mental health services instead. He did then complete the remainder of the assessment with more ease. He showed more tearfulness and fearfulness about possibly going to prison. At the conclusion, *he was coached by us to identify tools he could use to stay calm and cooperative when he returned to his cell.* It was presented to Mr. Mitchell that he had a far better chance of reaching his placement goals if he was cooperative with the staff, not screaming or becoming combative. We followed up with staff at the end of the day to see *how Mr. Mitchell behaved after that coaching.* It is our understanding that when he left our area, he did initially try to walk to the exit door, but otherwise was cooperative and remained civil the remainder of the day. This seems to indicate that Mr. Mitchell can *control his impulses when given incentives.* It also seems to suggest that he is more cooperative when he believes others are in his corner." (Emphases added.)

Mitchell points to excerpts from this paragraph as proof that, without coaching, he was incompetent to stand trial. But the trial court was justified in drawing precisely the opposite conclusion, as nothing in the report suggests that the "tools" or "coaching" given to Mitchell affected his *understanding*—just his ability to control his *behavior*. While the social worker could, of course, have testified on this point, Mitchell failed to present the social worker's testimony. In light of that failure, Mitchell cannot complain that the district court drew conclusions adverse to his position.

Having failed to clarify the meaning of "coaching and support" as something inconsistent with the court's inferences of competency, the absence of evidence does not help Mitchell prove otherwise. After all, Mitchell and his counsel appear to have discussed various matters from time to time throughout the case. Moreover, nothing suggests that Mitchell could not control his behavior throughout the proceedings.

8

Ultimately, given the court's reasonable inferences from the report, no evidence suggests that Mitchell was incompetent during any critical stage of his case. Thus, Mitchell has failed to satisfy his burden to overcome the presumption of competence through proof of his incompetence. In light of this failure, the presumption that Mitchell was competent controls. We find no error in the district court's competency determination.

*The district court did not abuse its discretion in failing to sua sponte order an evaluation under K.S.A. 2020 Supp. 22-3429.*

Mitchell next claims the district court erred by failing to order a mental evaluation for him under K.S.A. 2020 Supp. 22-3429.

*Standard of review*

We review a district court's decision to order an evaluation under K.S.A. 2020 Supp. 22-3429 for abuse of discretion. *State v. Hilyard*, 316 Kan. 326, 343, 515 P.3d 267 (2022).

*Preservation*

We begin with preservation. Mitchell claims the district court erred by rejecting his "explicit" request for an evaluation at Larned. But the record does not support this characterization. At the competency hearing, Mitchell had the following exchange with the district court:

"[Mitchell]:  I've been tested.

"[District Court]: You've been evaluated, but you've not been sentenced.

"[Mitchell]: From Larned?

"[District Court]: You've been evaluated by Crosswinds Counseling.

"[Mitchell]: Crosswinds Counseling. Do I get evaluated by Larned as well?

"[District Court]: At this point, that—

"[Mitchell]: Okay. But I—I haven't been receiving my medication is what I'm trying to get to. I need my meds."

We see no "explicit" request for an evaluation by Larned in this exchange. At most, it was a request for clarification, which he interrupted before the court could fully respond. Consequently, we view Mitchell's argument as a complaint that the district court failed to sua sponte order an evaluation under K.S.A. 2020 Supp. 22-3429.

Still, we have previously recognized that claims like Mitchell's implicate a fundamental right, which is one of three prudential exceptions to our general preservation rules. *Hilyard*, 316 Kan. at 343. We will again apply this exception to address Mitchell's argument for the first time on appeal.

*Discussion*

K.S.A. 2020 Supp. 22-3429 provides:

"After conviction and prior to sentence and as part of the . . . presentence investigation report as provided in K.S.A. 21-6813, and amendments thereto, the trial judge may order the defendant committed for mental examination, evaluation and report. If the defendant is convicted of a felony, the commitment shall be to the state security

10

hospital or any suitable local mental health facility. . . . A report of the examination and evaluation shall be furnished to the judge and shall be made available to the prosecuting attorney and counsel for the defendant. A defendant may not be detained for more than 120 days under a commitment made under this section."

K.S.A. 2022 Supp. 22-3430(a) authorizes a district court to commit a defendant to a mental care institution instead of imprisonment

"[i]f the report of the examination authorized by K.S.A. 22-3429, and amendments thereto, shows that the defendant is in need of psychiatric care and treatment, that such treatment may materially aid in the defendant's rehabilitation and that the defendant and society are not likely to be endangered by permitting the defendant to receive such psychiatric care and treatment."

We have rejected arguments like Mitchell's twice in recent years. First, in *State v. Evans*, 313 Kan. 972, 993, 492 P.3d 418 (2021), the defendant asserted we should reverse a district court's unjustified, perfunctory denial of a motion for evaluation under K.S.A. 2020 Supp. 22-3429. *Evans*, 313 Kan. at 992. Instead, we reasoned that the defendant's argument, if accepted, would have established "a rule that all requests for presentencing mental evaluations must be granted unless the trial court can state some compelling reason not to grant the request." 313 Kan. at 992. We observed that such a rule would conflict with the statute, which contained "clearly permissive" language granting district courts discretion over orders for evaluation under K.S.A. 2020 Supp. 22-3429. 313 Kan. at 992-93. We thus concluded that defendants bear the burden of persuading sentencing courts to order such evaluations. It was not the sentencing court's duty to specify, subject to appellate scrutiny, why the discretionary evaluation was not done. 313 Kan. at 992.

In *Hilyard*, we again addressed a challenge to a district court's failure to order an evaluation under K.S.A. 2016 Supp. 22-3429. 316 Kan. at 343-44. Unlike Evans, Hilyard did not ask the district court to order an evaluation. *Hilyard*, 316 Kan. at 343. But, as

11

noted, we addressed Hilyard's claim anyway because we agreed that "a fundamental right is implicated." 316 Kan. at 343. Even so, we still rejected Hilyard's argument:

> "Hilyard did not request a mental examination, let alone meet her burden to persuade the sentencing court to order a mental examination. The statute imposes no affirmative duty for courts to raise this issue sua sponte and whether to do so is clearly discretionary. There is no indication the sentencing judge was unaware of this discretion. There is no error." *Hilyard*, 316 Kan. at 345.

The same is true here. Although evidence of mental illness was present in both Hilyard's and Mitchell's cases, the district court was under no duty to sua sponte order an evaluation under K.S.A. 2020 Supp. 22-3429. Nor, as we pointed out in *Evans*, was it obliged to set forth compelling reasons *not* to order an evaluation. Thus, despite the district court's recognition that Mitchell "does have a mental illness" and the statements of counsel—which informed the district court that Mitchell had a history of involuntary commitment—the district court did not err in failing to sua sponte order an evaluation.

Mitchell also argues that the district court abused its discretion by failing to recognize that it *had* any discretion to exercise. But Mitchell takes the district court's comments out of context. When the district court noted at sentencing that it had "no decision today on the length of the sentence," it was speaking not of its discretion to order an evaluation, but of its discretion to order a different *sentence*. And the district court spoke accurately:  without an evaluation in hand, it had no discretion to order a different sentence, as we will discuss below. Thus, the district court did not indicate ignorance of its discretion by failing to sua sponte order an evaluation under K.S.A. 2020 Supp. 22-3429 and did not abuse its discretion by electing not to order the evaluation.

12

*The district court's application of Mitchell's criminal history score to his life sentence, as required by K.S.A. 2020 Supp. 21-6620(b), did not create an illegal sentence.*

Finally, Mitchell argues the district court erred by applying his "B" criminal history score to his felony murder sentence *and* to his aggravated assault on a law enforcement officer conviction.

*Standard of review*

Mitchell's argument turns on statutory interpretation, which this court reviews de novo. E.g., *Roe v. Phillips County Hosp.*, 317 Kan. 1, 5, 522 P.3d 277 (2023).

*Additional facts*

Upon receiving the presentence investigation report, Mitchell's counsel filed a motion for departure because "[p]ursuant to K.S.A. 21-6620, the sentence moves from the hard 25 to the grid." In the motion and again at sentencing, Mitchell's counsel argued against the double application of Mitchell's criminal history score to his sentence.

The district court reasoned that it "really does not have a decision today on the length of the sentence" for the felony murder conviction because "the statute" mandated "you go to the box on the grid, which is a 554-month minimum sentence" based on Mitchell's criminal history score of "B." The district court's journal entry reflects this as a life sentence with a minimum of 554 months before parole eligibility. The court also considered count two—aggravated assault on a law enforcement officer—as the "primary offense," and although it ran Mitchell's sentences for counts two through five (the longest of which was 39 months) concurrent, it ran them all consecutive with the 554-month sentence for count one. The district court thus ordered that Mitchell could not begin

13

serving his effective 39-month sentence on counts two through five until he had been paroled from his life sentence for count one.

*Discussion*

Mitchell's argument hinges on an alleged discrepancy between K.S.A. 2022 Supp. 21-6620(b)(2) and K.S.A. 2022 Supp. 21-6819(b). Mitchell claims that, under K.S.A. 2022 Supp. 21-6819(b), felony murder cannot be the primary crime and thus—as a nonbase offense—the only criminal history score that can be applied to it is "I."

We disagree. K.S.A. 2022 Supp. 21-6819(b) provides, in relevant part:

"(b) The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases. . . . In cases where consecutive sentences may be imposed by the sentencing judge, the following shall apply:

. . . .

(2) The sentencing judge shall establish a base sentence for the primary crime. The primary crime is the crime with the highest crime severity ranking. *An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences*. If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime. . . .

. . . .

(5) Nonbase sentences shall not have criminal history scores applied, as calculated in the criminal history I column of the grid, but base sentences shall have the full criminal history score assigned." (Emphasis added.)

14

But K.S.A. 2022 Supp. 21-6620(b) provides:

"(b) The provisions of this subsection shall apply only to the crime of murder in the first degree as described in K.S.A. 21-5402(a)(2), and amendments thereto, committed on or after July 1, 2014.

(1) Except as provided in subsection (b)(2), a defendant convicted of murder in the first degree as described in K.S.A. 21-5402(a)(2), and amendments thereto, shall be sentenced to imprisonment for life . . . . In addition, the defendant shall not be eligible for parole prior to serving 25 years' imprisonment, and such 25 years' imprisonment shall not be reduced by the application of good time credits. No other sentence shall be permitted.

(2) The provisions of subsection (b)(1) requiring the court to impose a mandatory minimum term of imprisonment of 25 years shall not apply if the court finds the defendant, because of the defendant's criminal history classification, would be subject to presumptive imprisonment pursuant to the sentencing guidelines grid for nondrug crimes and the sentencing range would exceed 300 months if the sentence established for a severity level 1 crime was imposed. *In such case, the defendant is required to serve a mandatory minimum term equal to the sentence established for a severity level 1 crime pursuant to the sentencing range.* The defendant shall not be eligible for parole prior to serving such mandatory minimum term of imprisonment, and such mandatory minimum term of imprisonment shall not be reduced by the application of good time credits. No other sentence shall be permitted." (Emphasis added.)

Mitchell's claim that his felony murder sentence *must* be nonbase hinges on a false dilemma: that K.S.A. 2022 Supp. 21-6819(b)(2) separates all sentences into base and nonbase categories. If this were true, off-grid sentences—which, by statute, cannot be base sentences—would necessarily qualify as nonbase sentences.

15

But this premise dissolves upon closer inspection. K.S.A. 2022 Supp. 21-6819(b) concerns *grid*-eligible crimes; it only mentions off-grid crimes to clarify that (1) off-grid crimes cannot be the *primary* crime that establishes a base sentence, and (2), "If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime." Since a base sentence is only established by a primary crime, and an off-grid crime cannot be the primary crime, nothing in the plain language of the statute suggests that off-grid crimes result in either a base or nonbase sentence. They instead represent a separate category: *life* sentences. Cf. *State v. Louis*, 305 Kan. 453, 466-68, 384 P.3d 1 (2016) (rejecting argument that the "double rule" of K.S.A. 2011 Supp. 21-6819[b][4] "limit[s] the total prison term for off-grid crimes to twice the sentence for any grid-felony conviction also entered in a multiple conviction case" because "[t]he statute clearly contemplates on-grid and off-grid sentences may be imposed in the same case"); *State v. Grotton*, 50 Kan. App. 2d 1028, 1033, 337 P.3d 56 (2014) (concluding "that grid and off-grid sentences are handled separately" under the predecessor to K.S.A. 21-6819[b] for purposes of the double rule); *State v. Cessna*, No. 115,999, 2018 WL 386844, at *5-6 (Kan. App. 2018) (unpublished opinion). To highlight this distinction, K.S.A. 2022 Supp. 21-6819(b)(2) mandates that a defendant must first be paroled from an off-grid sentence *before* they can begin to serve a consecutive on-grid sentence.

Further, nothing in the language of K.S.A. 2022 Supp. 21-6620(b)(2) alters the distinct character of life sentences by converting them to grid sentences. Unlike K.S.A. 2022 Supp. 21-6819(b)(5), K.S.A. 2022 Supp. 21-6620(b)(2) does not "apply" a defendant's criminal history score to a sentence—it applies the score to the minimum amount of time before a defendant is eligible for parole *while serving* a life sentence. Finally, unlike *State v. Zabrinas*, 271 Kan. 422, 24 P.3d 77 (2001), to which Mitchell likens his case, neither the plain language nor any reasonable interpretation of the statutes

16

here prohibits the use of Mitchell's criminal history score to calculate his minimum "life" sentence before parole eligibility. Thus, Mitchell's sentence was lawful.

CONCLUSION

Because we conclude the district court did not abuse its discretion and correctly applied Mitchell's criminal history to his mandatory minimum life sentence before parole eligibility, we affirm Mitchell's conviction and sentence.

Affirmed.