NOT DESIGNATED FOR PUBLICATION

No. 128,464

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN MICHAEL BRENNAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed May 15, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., BRUNS and HURST, JJ.

PER CURIAM:  Shawn Michael Brennan appeals his convictions of aggravated battery and battery against a law enforcement officer following a jury trial. Brennan claims the district court erred by finding him competent to stand trial, by admitting hearsay evidence, by violating his right to confrontation, and by failing to instruct the jury on lesser included offenses. After thoroughly reviewing the record and considering the parties' arguments, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2021, a man called 911 from a food bank in Wichita to report an assault. He stated that he was working when he heard someone screaming outside and then witnessed a man repeatedly punching an elderly woman in the face. The caller reported that the woman needed medical care and was "pretty bloody." He also told the dispatcher that the assailant—a disheveled white male in his 30s, who had long hair and was wearing a black, long sleeve t-shirt—had simply walked away after the attack.

When Officer Ben Ludwig of the Wichita Police Department arrived at the food bank, he spoke with the victim, A.S., whose face was bruised, swollen, and bloody. The food bank had a security camera that captured footage of the attack; it showed the man knocking the woman to the ground and then repeatedly punching her in the face after she had fallen. One of the officers who responded to the scene, Deputy Michael Clopton, thought he recognized the assailant in the video to be Brennan. Clopton identified Brennan based on his gait and his appearance. He noted the assailant was wearing the same outfit that Brennan had worn when he had been released from the Sedgwick County Jail the day before. He stated the attacker "was very clearly Shawn Brennan." At that point, the officers obtained a pick up order for Brennan's arrest.

Two days after the attack at the food bank, Officer Corbin Moren spotted Brennan in a QuikTrip parking lot. Moren called for Brennan to stop, and then promptly told Brennan that he was under arrest for battery and handcuffed him. Moren began to search Brennan, asking if he had anything sharp in his pockets. Brennan responded, "I probably got a gun in my hand." As Moren continued his pat down, Brennan stated that he was going to batter him and then promptly headbutted Moren in the face. Moren was able to subdue Brennan, and, after seeing a doctor for his injuries, he returned to work the next day.

On November 9, 2021, the State charged Brennan with aggravated battery for the incident involving A.S. outside the food bank and battery against a law enforcement officer for the incident involving Moren outside the QuikTrip. Following Brennan's first appearance, his trial counsel moved the district court to order an evaluation of Brennan's competency to stand trial. Based on the motion, the district court entered an order for determination of Brennan's competency. At a hearing on February 4, 2022, following the recommendations from the competency evaluation, the district court found Brennan to be incompetent to stand trial and ordered him to be committed to Larned State Hospital (LSH) for treatment until his competence was restored.

About a year and a half later, in August 2023, based on an update letter from LSH, the district court ordered the continuation of Brennan's treatment, noting that Brennan remained incompetent but had "a substantial probability of attaining competency in the foreseeable future." The district court ordered that Brennan would remain at LSH "until [he] attains competency." At a hearing on September 8, 2023, upon receiving a new report from LSH finding that Brennan was now competent to stand trial, the district court ordered the State's case against Brennan could be resumed.

On January 26, 2024, Brennan's counsel filed a motion requesting another evaluation to determine whether Brennan was competent to stand trial. The district court granted the motion and ordered another competency evaluation to be conducted by Community Care of Sedgwick County (COMCARE). That evaluation was conducted on April 7, 2024. The report found Brennan was competent to both understand the nature of the proceedings against him and to assist in making his defense. It noted Brennan's "mild delusions and residual symptoms" impacted his ability to express himself but would not hamper his ability to meaningfully participate in or understand the court proceedings.

The district court held an evidentiary hearing on Brennan's competency on April 19, 2024. The social worker who had evaluated Brennan at COMCARE testified that,

3

despite Brennan's schizophrenia and communication difficulties, she still believed he was competent to stand trial. After hearing the evidence, the district court concluded Brennan was competent to stand trial. In explaining its finding, the district court noted the reports from LSH and COMCARE both found that Brennan was able to understand the nature and purpose of the proceedings and was able to make and assist in his defense.

On May 28, 2024, the parties proceeded to a jury trial. During voir dire, Brennan's trial counsel objected to continuing with proceedings, arguing Brennan was not competent to stand trial. Counsel asked the district court to order a reevaluation of Brennan's competency. The district court denied the request, noting there was nothing indicating Brennan's condition had changed since the prior two evaluations, which had both found Brennan was competent to stand trial.

Before the State presented its case, the prosecutor stated the victim of Brennan's attack at the food bank, A.S., would not be appearing to testify. The State explained it intended to offer A.S.'s statements about the attack that she had relayed to her treating physician. Brennan's counsel objected on the grounds of hearsay and Brennan's right to confrontation under the Sixth Amendment to the United States Constitution. The district court ruled it would allow the doctor to testify solely about statements made by A.S. to the doctor in furtherance of her treatment. The State proceeded with its case, calling as witnesses various law enforcement officers involved in the case, the doctor who treated A.S., and Moren. The State also presented video footage of Brennan's attack on A.S. at the food bank and his arrest and attack on Moren at the QuikTrip.

Brennan did not testify or present evidence in his defense. In closing argument, Brennan's counsel argued that the video of the attack on A.S. at the food bank failed to prove his identity. As for the attack on Moren at the arrest, counsel argued that it did not result in bodily harm and that Moren only "had a headache that lasted that day."

4

After hearing the evidence and the parties' arguments, the jury found Brennan guilty of aggravated battery and battery against a law enforcement officer causing bodily harm. On July 16, 2024, the district court sentenced Brennan to 47 months' imprisonment. Brennan timely appealed the district court's judgment.

*Did the District Court Err by Finding Brennan Was Competent to Stand Trial?*

Brennan first claims the district court abused its discretion, both procedurally and substantively, in handling the question of his competence to stand trial. Procedurally, Brennan contends, under K.S.A. 22-3302, that the district court erred by not granting his counsel's request for an additional competency evaluation on the first day of trial. Substantively, Brennan asserts the district court abused its discretion in concluding he was competent to stand trial. The State maintains that the district court acted within its discretion both when it denied Brennan's counsel's request for another competency evaluation and when it concluded that Brennan was competent to stand trial.

An appellate court reviews a district court's decision that a defendant is competent to stand trial for an abuse of discretion. An abuse of discretion will be found if the district court's decision was (1) based on an error of law, (2) based on an error of fact, or (3) was arbitrary, fanciful, or unreasonable. *State v. Woods*, 301 Kan. 852, 860-61, 348 P.3d 583 (2015). Likewise, a challenge of a district court's decision not to conduct a competency hearing is reviewed for an abuse of discretion. *State v. Barnes*, 293 Kan. 240, 255-56, 262 P.3d 297 (2011). The party asserting the district court abused its discretion bears the burden of showing it. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

"'[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.'" *State v. Ford*, 302 Kan. 455, 461, 353 P.3d 1143 (2015). K.S.A. 22-3301(a) states: "A person is 'incompetent to stand trial' when such person is charged with a crime and, because of mental illness or

5

defect is unable:  (1) To understand the nature and purpose of the proceedings against such person; or (2) to make or assist in making such person's defense."

The Kansas Supreme Court has embraced both procedural and substantive competency claims under this due process framework. *Woods*, 301 Kan. at 860. "A procedural competency claim . . . is generally based upon the district court's alleged failure to hold a competency hearing or its failure to hold an adequate competency hearing. A substantive competency claim alleges the defendant was tried and convicted while, in fact, incompetent." *State v. Stewart*, 306 Kan. 237, 252, 393 P.3d 1031 (2017). "In assessing a procedural competency claim, due process is satisfied if the court adheres to the statutory framework set forth in K.S.A. 2022 Supp. 22-3302." *State v. Mitchell*, 317 Kan. 792, 795, 539 P.3d 218 (2023). And "[i]n assessing a substantive competency claim, due process is satisfied if substantial competent evidence supports a finding of actual competency." 317 Kan. at 795. "Courts presume a criminal defendant is competent to stand trial." *Barnes*, 293 Kan. at 256. As the party raising the competency issue, the burden of proof was on Brennan to present a preponderance of evidence displaying his incompetence. *State v. Cellier*, 263 Kan. 54, Syl. ¶ 4, 948 P.2d 616 (1997).

*Procedural Competency Claim*

Citing K.S.A. 22-3302, Brennan contends the district court was statutorily compelled to order another competency hearing on the first day of his jury trial when his trial counsel raised the matter during voir dire. He asserts this court must reverse his convictions because he "met the conditions requiring a hearing under K.S.A. 22-3302 when [his] counsel requested a competency evaluation before proceeding with trial." The State responds that Brennan's argument misconstrues the statute and that the district court was only required to order another competency hearing if there was reason to believe that Brennan was incompetent, which it argues there was not.

6

K.S.A. 22-3302(a) provides:

> "At any time after the defendant has been charged with a crime and before pronouncement of sentence, the defendant, the defendant's counsel or the prosecuting attorney may request a determination of the defendant's competency to stand trial. If, upon the request of either party or upon the judge's own knowledge and observation, the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial, the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant."

A district court need not order a competency hearing simply because it is requested, rather the court is only required to do so if "upon the judge's own knowledge and observation, . . . *there is reason to believe that the defendant is incompetent*." (Emphasis added.) K.S.A. 22-3302(a). The analysis of this issue is thus dependent on whether the district judge had a reason to believe, based on his knowledge and observation, that Brennan was incompetent on the first day of trial.

The record shows that the district court carefully considered Brennan's trial counsel's request and asked if there had been any developments in Brennan's condition since the prior competency hearing suggesting that Brennan had regressed. During voir dire, Brennan's trial counsel objected to continuing the trial and asked the court to order another competency evaluation. Brennan's counsel expressed some concern about Brennan remembering their discussions about the case from one meeting to the next. Ultimately, Brennan's counsel explained that his concerns merely regarded Brennan's ability to communicate and effectively assist in his defense, not Brennan's understanding of the proceedings against him. Brennan's counsel further clarified that there had been no incidents or episodes that pointed toward Brennan sliding back to a state of incompetence since the evidence hearing on the matter.

7

In response to these concerns, the district judge explained:

"[W]e now have two back-to-back evaluations done finding Mr. Brennan competent. We have the one from Larned that was done late last year. . . . So it was either August/September of last year. Then we have the report done more recently, January/February of this year by COMCARE, again, finding Mr. Brennan competent. It was noted in his most recent competency that he continued to maintain his meds, and he was complying with that.

"I will also note, my experience has been COMCARE competency evaluations typically err on the side of incompetency. . . . So I find that they're very strict on this.

"The other thing is there's nothing articulated here that there's been a change, that there's been some episode or, you know, medication, last I've seen, staying on that. And so there's no indication there's been some mental-health event that would change things either.

"And we talked about that—this—a lot of the issues raised by Mr. Bales at the last competency hearing. I understand the issues with, you know, communication, that sort of thing. That is not the standard. You know, just, hey, this isn't the best communicating client. These issues happen, and you'll have individuals, they were under the influence at the time of the event. They black out. They don't remember sometimes. And so you just have to do your attorney thing."

To alleviate some of Brennan's counsel's concerns, the district court stated that it would be flexible in permitting more frequent breaks so that Brennan and his counsel would have more time to confer during the trial. Nothing in the record suggests that the district court disregarded any indication that Brennan was not competent at the time the final request for an evaluation was made. Thus, the court did not abuse its discretion in finding there was no reason to believe that Brennan was not competent to stand trial and not ordering another competency evaluation.

In *Medina v. California*, 505 U.S. 437, 451, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992), the United States Supreme Court held that a statutory procedure to determine a defendant's competence satisfies due process so long as it "affords the criminal defendant

. . . a reasonable opportunity to demonstrate that he is not competent to stand trial." Here, the district court followed the applicable procedure as set forth in K.S.A. 22-3302, considering all of the circumstances before the court before declining to order another competency hearing. Brennan received ample opportunity to demonstrate his incompetence to stand trial. Because it cannot be said that the district court's decision was an abuse of discretion, Brennan's procedural challenge is unavailing.

*Substantive Competency Claim*

Next, Brennan argues the district court abused its discretion by concluding that he was competent to stand trial. The State maintains that substantial evidence in the record supports the district court's finding that Brennan was competent to stand trial. As noted above, in assessing a substantive competency claim, due process is satisfied if substantial competent evidence supports a finding of actual competency. *Mitchell*, 317 Kan. at 795.

Brennan appears to argue that the district court's initial finding that he was incompetent, and the earlier evaluations supporting that finding, should have prevented the district court from making the subsequent finding that he was competent to stand trial after over two years of treatment at LSH. He claims the final two competency evaluations that were conducted—which both concluded that he was competent—do not constitute substantial competent evidence to support the court's decision. Brennan is correct that the record shows that he had a long history of mental illness and that evaluators, in 2022 and 2023, concluded he was not competent to stand trial. But Brennan would have this court declare that the district court abused its discretion by following the recommendations in the final two professional competency evaluations—performed in 2023 and 2024—over the initial ones. He offers no explanation of how the district court's reliance on the final two evaluations in determining that he was competent constituted an abuse of discretion.

9

The district court ordered Brennan to be committed and to undergo treatment at LSH due to his incompetence in February 2022. The evaluation that order was based on was performed in January 2022. The district court extended its order after it was notified that Brennan remain at LSH for further competency restoration treatment. But Brennan was later reevaluated by the staff at LSH and found to be competent to stand trial. A letter from the Chief Medical Officer, Dr. Michael Burke, explained: "Clinical staff completed an evaluation of the Patient and a report is submitted herewith. The staff concluded that the Patient is currently competent to stand trial." The evaluation attached to that letter explained that while Brennan had been diagnosed with schizophrenia, he was taking medication and "his symptoms have abated." The evaluation indicated that Brennan had a basic understanding of the charges he was facing, the potential consequences, and the trial process. The report also concluded that Brennan "was capable of participating with [his attorney] in forming a defense to his charges" and "had the ability to present with the expected courtroom decorum." The report concluded:

"Currently, Mr. Brennan does not exhibit symptomatology of a mental disorder that would impair his abilities to evaluate the evidence against him, work with his attorney to develop a defense strategy, and maintain appropriate courtroom behavior. Mr. Brennan has a sufficient understanding of his current legal charges, the seriousness of these charges, and possible penalty. He distinguished between evidence and witnesses and/or the part each has concerning his defense. Mr. Brennan has an adequate understanding of the roles of court officials and understands the importance of providing his attorney with case-relevant information; he understands the significance of the case-relevant information and more general legal information provided by the attorney. In addition, he can communicate preferences regarding how the case will be handled. Further, Mr. Brennan has a basic understanding of his role as the defendant and how he will be treated by the legal system in several important ways.

"Mr. Brennan's responses to the semi-structured questions indicated no impairment in his ability to understand his legal issue, make rational decisions based on that understanding or assist his attorney in formulating his defense. Thus, at this time, it is the recommendation of this examiner that Mr. Brennan be found competent to stand trial.

"Additionally, based on his history, it is likely that if Mr. Brennan is not maintained on psychotropic medication, he would likely decompensate and his mental health would deteriorate. Therefore, it is respectfully requested Mr. Brennan be maintained on psychotropic medication monitored and managed by a psychiatrist."

Based on this report, the district court placed Brennan's case back on the docket. Still, the district court granted Brennan's counsel's request for a follow-up evaluation, this time with COMCARE rather than LSH staff. The COMCARE evaluation, performed on April 7, 2024, also found Brennan was competent to stand trial. That report concluded: "At the time of the evaluation, it is the determination of this examiner that Mr. Brennan IS COMPETENT 1.) to understand the nature of the proceedings against him and IS COMPETENT 2.) [t]o make or assist in making his own defense."

At the evidentiary hearing on Brennan's competency, the social worker who performed the COMCARE evaluation testified to her conclusion that Brennan was competent to stand trial. She explained that Brennan was in the residual phase of schizophrenia and tended to give short responses and could have difficulty providing lengthy answers to his attorneys. That said, she was still ultimately of the opinion that Brennan was competent to stand trial. Brennan's argument on appeal that the social worker's testimony contradicted her evaluation is not supported by the record. The social worker gave a nuanced opinion, explaining that while Brennan faced challenges with communication, she thought he was competent to stand trial.

The district court found Brennan to be competent based on the COMCARE evaluation, the final LSH evaluation, and the court's own observations of Brennan throughout the case. And the district court relied on these reports and conclusions again when Brennan's counsel asked for another competency evaluation on the first day of trial. Under this court's standard of review, which looks to whether substantial evidence in the

11

record supports the district court's conclusion, it cannot be said that the district court abused its discretion in concluding Brennan was competent to stand trial.

Finally, Brennan argues that "[t]he record does not include any evidence that Shawn stayed on all recommended medications or was managed by a psychiatrist in the months leading up to trial." While this assertion may be true, the record contains no evidence that Brennan was off his medication or not being managed by a psychiatrist either. Brennan is not entitled to relief based on a lack of evidence in a record on appeal, especially considering he is tasked with designating a record to establish a complaint of error. Brennan offers no reason to discount the opinions offered by the evaluators who found him competent. The district court was entitled to rely on those opinions as evidence of Brennan's competency, and it did not abuse its discretion in doing so.

*Did the District Court Commit Reversible Error by Admitting Hearsay Evidence?*

Brennan next claims the district court erred when it allowed A.S.'s doctor to testify about the details of how A.S. was injured during the attack at the food bank. Brennan argues this ruling amounted to reversible error. The State does not dispute that the challenged statements are hearsay but maintains the district court acted within its discretion in admitting the statement under the medical diagnosis and treatment exception to the hearsay rule at K.S.A. 60-460(l)(2). Alternatively, the State argues that any error in the admission of the evidence was harmless.

An appellate court reviews a district court's decision that hearsay evidence is admissible under a statutory exception for an abuse of discretion. *State v. Sean*, 306 Kan. 963, 983, 399 P.3d 168 (2017). A district court abuses its discretion if it commits an error of law. 306 Kan. at 983. As noted above, A.S., the victim of Brennan's food bank attack, did not appear to testify at trial. The State said that it would not admit her statements to police and would only present evidence of what she told her doctor about the incident.

12

Brennan's counsel objected on hearsay grounds, but the district court overruled the objection, finding the doctor would be allowed to testify about statements A.S. made in furtherance of her medical diagnosis and treatment.

When the State called the physician, Rebecca Foster, D.O., she explained that A.S. came in for an appointment three days after the attack and recounted the details of the visit. Foster testified that A.S. "came in because she had sustained an assault and had injuries to her face, primarily, as well as the rest of her body." Referring to her notes from A.S.'s visit, Foster stated,

> "So she had told me that she was in south Wichita. And in my note, I think I put helping a friend move, but I don't quite remember the context of what she was doing.
>> "But—and a man came up and started hitting her, punching her in the face, and then eventually she fell to the ground."

Foster stated that A.S. had suffered several contusions to her hand, eye, and shoulder, and noted that she ordered a CT scan because she was concerned that A.S. may have suffered a facial fracture. She explained that these injuries were consistent with the attack A.S. had described and the surveillance footage of the incident. Brennan argues the district court erred by allowing Foster to testify regarding what A.S. told her about how the attack happened. He argues the Kansas version of the medical diagnosis and treatment exception to the hearsay rule prohibits a doctor from testifying about their patient's statements about the cause of their injuries.

K.S.A. 60-460 bars the admission of "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated" unless that evidence falls into one of the exceptions in the statute. Relevant here, K.S.A. 60-460(l)(2), the medical diagnosis and treatment exception, provides:

"Unless the judge finds it was made in bad faith, a statement of the declarant's: . . . (2) previous symptoms, pain or physical sensation, made to a physician consulted for treatment or for diagnosis with a view to treatment, and relevant to an issue of declarant's bodily condition."

As Brennan points out, the federal counterpart of this rule, Fed. R. Evid. 803(4), provides that the *cause* of a patient's symptoms or pain are expressly included within the exception when they are reasonably pertinent to the diagnosis or treatment. The Kansas rule on the other hand is narrower, excluding language about the patient's statements about the general cause of their symptoms. Brennan argues this omission indicates the Kansas exception for medical diagnosis does not permit statements such as A.S.'s about the cause of an injury made to a medical professional.

Brennan points to caselaw to support his argument that the exception in K.S.A. 60-460(l)(2) excludes a patient's statements about the cause of their pain and injuries. Before the codification of the rule, in *Cain v. Steely*, 173 Kan. 866, 870, 252 P.2d 909 (1953), the Kansas Supreme Court held it was a long-standing rule that a physician could not testify as to what a patient told him or her with respect to the history of the case or the cause or duration of the injury. More recently, in *State v. Todd*, 24 Kan. App. 2d 796, 803-04, 954 P.2d 1 (1998), this court concluded that under the plain language of K.S.A. 60-460(l)(2), the exception for doctor-patient communications did not extend to statements about the cause of the injury.

Under the prevailing interpretation of K.S.A. 60-460(l)(2), Brennan is correct that statements made by a patient about the *cause* of their injuries and symptoms—as opposed to merely statements describing their symptoms and pain—are not included in the exception. Thus, we conclude the district court abused its discretion by admitting Foster's statement regarding A.S.'s recollection of how the attack occurred.

14

If the district court improperly admitted hearsay evidence, this court must next determine whether that error was harmless. "The erroneous admission is harmless if it does not implicate a defendant's constitutional rights and there is no reasonable probability the error affected the trial's outcome considering the entire record." *State v. Gutierrez-Fuentes*, 315 Kan. 341, 356, 508 P.3d 378 (2022).

Considering the entire record, there is no reasonable probability that this evidentiary error affected the outcome of the trial. Contrary to Brennan's assertion that Foster's testimony was the only evidence describing how the attack happened, the State also admitted the 911 call and security footage from the food bank. Both of these sources set forth the same events—a man approached A.S., punched her in the face, knocked her to the ground, and then continued to hit her. How the attack happened or what caused A.S.'s injuries was not the issue at trial—Brennan's only defense was identity. Significantly, Foster's testimony did not identify Brennan as the attacker. While the district court abused its discretion by admitting hearsay evidence, the error was harmless.

*Did the District Court Violate Brennan's Right to Confrontation?*

Brennan next claims the admission of Foster's testimony about A.S.'s description of the attack violated his right to confrontation under the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. The State maintains that Brennan's constitutional challenge is not properly before this court and, even if it is preserved, the challenged statement was not testimonial. This court exercises unlimited review over a defendant's claim that their right to confrontation has been violated. *State v. Belone*, 295 Kan. 499, 502-03, 285 P.3d 378 (2012).

To begin, Brennan's constitutional challenge is properly preserved for this court's review. Brennan's trial counsel repeatedly objected to the State's use of Foster's testimony to present A.S.'s statement about how the attack occurred. The objections were based not

only on statutory hearsay grounds but also based on a violation of Brennan's right to confront the complaining witness. Brennan's constitutional claim is preserved.

Both the Sixth Amendment and section 10 of the Kansas Constitution Bill of Rights provide a criminal defendant the right to be confronted by the witnesses against them. These rights bar the admission of *testimonial* hearsay "unless a court finds that the declarant is unavailable as a witness and that the defendant had a prior opportunity to cross-examine the declarant." *State v. Robinson*, 293 Kan. 1002, 1024, 270 P.3d 1183 (2012). But nontestimonial hearsay does not implicate a defendant's constitutional right to confrontation. 293 Kan. at 1024. So, the foundational task for this court is to determine whether A.S.'s description of the attack to Foster was testimonial.

The United States Supreme Court has suggested that a statement is testimonial if the circumstances "objectively indicate" that the primary purpose of the questioning is to establish past events that would be relevant in a criminal prosecution. See *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). When as here, the challenged statements are made to individuals other than law enforcement, courts employ the "primary purpose test" asking "whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245-46, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015). Similarly, the Kansas Supreme Court has noted that the inquiry into what constitutes a testimonial statement "'should generally seek to identify statements that are by nature substituting for trial testimony.'" *State v. Carr*, 314 Kan. 615, 677, 502 P.3d 546 (2022).

In *State v. Miller*, 293 Kan. 535, 559, 264 P.3d 461 (2011), the Kansas Supreme Court emphasized certain factors to consider in determining whether a statement is testimonial, including the identity of the person to whom the statement was made, the existence of an ongoing emergency, the purpose of the questioning, and the formality of

the encounter. The *Miller* court also explained that "statements made for the *sole* purpose of medical treatment, regardless of the employer of the medical professional to whom the statements are made, are not testimonial." (Emphasis added.) 293 Kan. at 575-76. Subsequently, the Kansas Supreme Court summarized the relevant holding in *Miller* as follows:

> "To determine whether a questioner solely pursued medical treatment we should ask 'whether the interrogator is an agent of law enforcement charged with gathering information for purposes of trial' and examine the specific questions and responses because some questions could be interpreted as serving either a medical function or a law enforcement function, or both. We discussed several helpful factors—including the witness' consent; whether the medical professional followed evidence-collection protocols; whether the witness or law enforcement requested the examination; and whether the witness requested information to not be shared with law enforcement. [Citations omitted.]" *State v. Stafford*, 312 Kan. 577, 589, 477 P.3d 1027 (2020).

Here, the record shows that A.S. suffered injuries—multiple contusions on her face, shoulder, and hand—and she went to Foster for medical assessment and treatment three days after the attack. Foster is not a state agent, and she was not acting as a state agent while she was evaluating A.S. From Foster's testimony, it appears that A.S.'s recitation of how she sustained the injuries was merely part of her normal diagnostic approach, taking the patient's history and obtaining information about the symptoms. A.S. did not identify Brennan in her explanation, she merely explained how she suffered the injuries. A.S.'s statements to Foster about how the incident occurred were not made to help gather evidence against Brennan.

An objective evaluation of the totality of the circumstances suggests that A.S.'s recount of the attack as part of her medical evaluation by Foster was nontestimonial. The statement was made for a medical purpose. As such, Brennan's constitutional right to confrontation was not implicated.

*Did the District Court Commit Clear Error by Failing to Give Jury Instructions on Lesser Included Offenses?*

Finally, Brennan claims the district court's failure to give unrequested jury instructions on the lesser included offenses of intentional aggravated battery—reckless aggravated battery and simple battery—constituted clear error. The State responds that the failure to give the unrequested instructions was not clearly erroneous.

When, as here, a party raises a jury instruction issue for the first time on appeal, this court must determine whether the failure to give the instruction was clearly erroneous. K.S.A. 22-3414(3); *State v. Turner*, 318 Kan. 162, 166-67, 542 P.3d 304 (2024). To be clearly erroneous, the instruction must have been legally or factually appropriate and this court must be firmly convinced the jury would have reached a different verdict had the instruction been given. Brennan has the burden to show both error and prejudice. See *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024).

An instruction on a lesser included crime of the charged crime is a legally appropriate instruction. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). The State does not dispute that reckless aggravated battery and simple battery are lesser included offenses of the charged crime and were therefore legally appropriate. See K.S.A. 21-5109(b)(1)-(2); K.S.A. 21-5413(a)(1), (b)(1)(B), (b)(2)(B); *State v. Perez-Medina*, 310 Kan. 525, 535, 448 P.3d 446 (2019); *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012).

A jury instruction is factually appropriate if, viewing the evidence in the most favorable light to the defendant, there was sufficient evidence that would have supported the instruction. This is not an onerous standard; the "court must consider whether there is some evidence, viewed in a light most favorable to the defendant, emanating from

whatever source and proffered by whichever party, that would reasonably justify the defendant's conviction for that lesser included crime." *State v. Lowe*, 317 Kan. 713, Syl. ¶ 1, 718, 538 P.3d 1094 (2023). In doing so, this court does not reweigh the evidence or reassess witness credibility. *State v. Gomez*, 320 Kan. 3, 11, 561 P.3d 908 (2025).

Brennan argues that some evidence supports the lesser included offense jury instructions for reckless aggravated battery and simple battery because under K.S.A. 21-5202(c) the same evidence that established a knowing mental state also establishes a reckless mental state. In *State v. Green*, 55 Kan. App. 2d 595, 614, 419 P.3d 83 (2018), this court rejected a similar argument, holding that K.S.A. 21-5202(c) does not require instructions on every lesser included offense with a lower culpable mental state. The *Green* panel explained that applying this logic would lead to the conclusion that lesser included offense instructions were always both legally and factually appropriate in every case. 55 Kan. App. 2d at 614.

To prove reckless aggravated battery, the State would need to show that Brennan "recklessly caus[ed] bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 21-5413(b)(2)(B). A person acts "'recklessly'" "when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j). A person acts "'knowingly'" "when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 21-5202(i).

The video of the attack supports only a finding that Brennan's attack on A.S. was intentional and deliberate in terms of both the manner of Brennan's conduct and the intended result. The attacker brutally slugged A.S. in the face with his fists until she fell to the ground, started to walk away, and then returned and appeared to taunt A.S. as she

19

laid helpless on the ground. Moreover, the attacker's state of mind and culpable mental conduct was never raised as an issue at trial—Brennan's only defense to the aggravated battery charge was the State's failure to prove identity beyond a reasonable doubt. We reject Brennan's assertion on appeal that a jury instruction on reckless aggravated battery would have been factually appropriate.

But even if we were to find that a jury instruction on reckless aggravated battery would have been factually appropriate, because Brennan did not request the instruction, the burden is on Brennan to firmly convince this court that the jury would have reached a different verdict had the instruction been given. See *Mendez*, 319 Kan. at 727-28. Because A.S. did not testify, the evidence of the attack was almost entirely in the form of the security video from the food bank. That footage shows Brennan walk up to A.S. and strike her in the face. Brennan then proceeds to repeatedly pummel her once she has fallen to the ground. Almost all of the punches appear to be targeted at A.S.'s head. The video is shocking and brutal. Had the jury received an instruction on reckless aggravated battery, it is unlikely it would have been swayed from the conclusion that Brennan's conduct was intentional. We are not firmly convinced otherwise. Thus, the district court's failure to instruct on reckless aggravated battery was not clearly erroneous.

Turning to the offense of simple battery, it is defined as "[k]nowingly or recklessly causing bodily harm to another person." K.S.A. 21-5413(a)(1). Aggravated battery, as Brennan was charged, is "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 21-5413(b)(1)(B). The key difference between the crimes of battery and aggravated battery is the severity of harm suffered by the victim or the manner in which the harm was inflicted. There was some evidence, in the light most favorable to Brennan, to support a claim that he caused bodily harm, but not great bodily harm, to A.S. Thus, a simple battery instruction would have been factually appropriate.

20

Again, we must be firmly convinced by Brennan that the jury would have reached a different verdict had the instructions been given. See *Mendez*, 319 Kan. at 727-28. The evidence of A.S.'s injuries substantially diminishes the possibility the jury would have found Brennan guilty of merely committing simple battery. Foster, the physician who diagnosed and treated A.S., testified that A.S. "had significant swelling and bruising on her face." Foster was concerned that A.S. may have sustained an "underlying facial fracture" that could result in a loss of vision. A.S. reported to Foster that she had "some blurred vision." This evidence easily supports the finding that Brennan committed an aggravated battery. We are not firmly convinced the jury would have reached a different verdict had an instruction on simple battery been given. Thus, the district court's failure to instruct on simple battery was not clearly erroneous.

Affirmed.